Markey, J.
 

 In this appeal involving the interpretation and application of the housing accommodations provisions of the Michigan Persons With Disabilities Civil Rights Act (pwdcra),
 
 [1]
 
 MCL 37.1101
 
 et seq.,
 
 defendants Swan Harbour Associates, Swan Harbour Apart
 
 *403
 
 ments, II, Huntington Management, and Dawn R. Combs appeal by right the trial court’s order of judgment entered in accordance with the jury’s award of over $3.8 million to plaintiff Ronald Bachman. In this case, we must decide, among other issues, the scope of the legal duty imposed on apartment owners to accommodate tenants with disabilities after leasing an apartment to them. We reverse and remand.
 

 I. FACTS AND PROCEDURAL HISTORY
 

 Defendant Swan Harbour Associates owms and operates Swan Harbour Apartments in Northville Township, a complex of eighteen buildings with over 260 apartments. Defendant Huntington Management manages the apartments, and defendant Dawn Combs was the residential manager who handled daily operations at Swan Harbour Apartments from October 1996 through December 1998. Plaintiff was bom with a disease that required amputation of both his legs at the age of four. For most of plaintiff’s adult life, he has moved around by walking on his hands rather than by using prostheses. In February 1988, plaintiff and his daughter moved into a non-barrier-free apartment at Swan Harbour Apartments.
 
 [2]
 
 In 1995, after plaintiff injured his back in an accident, he began to rely on a motorized scooter for mobility rather than walking on his hands. At that time, plaintiff also obtained a handicapped-equipped van with an extending ramp to accommodate his scooter.
 

 It appears from the record that plaintiff resided at Swan Harbour Apartments from 1988 until 1995 with
 
 *404
 
 out any major incidents or complaints. Shortly after plaintiff moved into his apartment in 1988, Swan Har-bour installed ramps from the parking lot to the sidewalk and over the steps leading into plaintiffs apartment building so that plaintiff could gain access to his apartment. When plaintiff obtained his handicapped-equipped van in 1995, he leased an additional parking space from a fellow tenant in order to accommodate the side ramp on his van. In 1996, when the tenant reclaimed her parking spot, plaintiff submitted a written request to Swan Harbour for an additional parking space to accommodate his van. There is no dispute between the parties that the additional parking space was provided within a reasonable time at no extra fee to plaintiff.
 

 In 1997, Swan Harbour began a sidewalk replacement project that placed several cutaways into the curbs to provide individuals with disabilities points of access from the parking lot onto the sidewalk. Upon completion of the project, access to the apartment building in which plaintiff lived was attainable by three cutaways, one close to plaintiffs assigned parking spaces and two less conveniently located for his use. According to plaintiff, although he experienced some access problems before the new sidewalks and cutaways were installed, gaining access to his apartment became much more difficult after the installation of the sidewalks because no handicapped signs and blue paint existed to inform people of the cutaways and plaintiffs parking spaces. Plaintiff testified that tenants and visitors began parking either too close to his parking spaces or in front of the curb cutaway so that his access was blocked to the cutaway closest to his parking spaces.
 

 
 *405
 
 In June or July 1997, plaintiff made oral requests to employees at Swan Harbour Apartments that signs and blue paint be displayed at both the cutaway area and his parking spaces to remedy his access problems. According to plaintiff, the apartment management refused his oral requests,
 
 [3]
 
 and defendant Dawn Combs told plaintiff, “I don’t know who you people think you are but you are not going to get any special treatment here.”
 
 [4]
 
 The apartment management advised plaintiff to put his requests in writing. In July and August of 1997, plaintiff failed to pay his rent, so Swan Harbour filed a complaint for a judgment of possession for nonpayment of rent. Plaintiff made only a partial payment of the rent just before the hearing, so a judgment for possession was subsequently entered. Plaintiff was allowed ten days to pay any overdue rent, and plaintiff timely satisfied the balance of the judgment.
 

 In October 1997, plaintiff wrote a letter to Swan Harbour informing its management of the parking problems and that his health conditions
 
 [5]
 
 required him to have uninterrupted access to his apartment. In the letter, plaintiff requested that his carports be marked handicapped and that a sign be posted at the cutaway
 
 *406
 
 nearest his carports instructing people not to block that area. It appears that the letter contained no specific request for blue paint. Plaintiff also requested that his patio be made accessible so that he would be able to leave on his scooter out the patio door in case of a fire or other emergency. After submitting his letter, plaintiff filed a complaint on or about October 31, 1997, with Northville Township regarding the placement of the signs.
 
 [6]
 
 Although plaintiff claims that the township ordinance officer who inspected the site determined that a handicapped sign was required by law, testimony presented at trial conflicted with this determination. At trial, because the township ordinance officer who inspected the site was then deceased, the chief building official from Northville Township testified. He stated that neither handicapped signs nor blue paint were required at private covered parking spaces like plaintiffs or at a curb cutaway.
 

 In any event, on November 20, 1997, defendants installed the signs at plaintiffs carports and at the cutaway as plaintiff requested. At trial, plaintiff testified that “[n]inety-nine point nine percent” of his parking problems were resolved once the signs were installed. Regarding the blue paint issue, it appears from the record that although plaintiff orally requested blue paint, he may have never specifically requested this in writing. One of the owners of defendant Huntington Management testified that she is responsible for authorizing blue paint requests and that she did not become aware of plaintiffs blue paint
 
 *407
 
 request until about six months to a year before the trial commenced in April 2000. In October 1999, defendants painted plaintiff’s parking spaces with blue paint.
 

 With respect to plaintiff’s October 1997 written request for a rear patio ramp, it appears that defendants responded within about a month and built a wooden ramp at a cost of about $100
 
 [7]
 
 to accommodate plaintiff. However, plaintiff considered the ramp to be inadequate. Moreover, the ramp initially did not work because it was too wide to fit through the patio door. Although there is some dispute regarding when defendants knew that the ramp did not work because of its width, the ramp was not fixed until more than a year after it was first delivered to plaintiff. The ramp was designed so that plaintiff was required to bend over while seated on his scooter, locate a string, and pull a portion of the ramp into the apartment through a patio door. The ramp also was adequate for emergency use only and was not designed so that plaintiff could regularly use his patio.
 

 In July 1998, plaintiff filed this lawsuit, claiming that defendants deprived him of his civil right to housing by refusing to accommodate his disability and by discriminating and retaliating against him for having sought accommodations. Specifically, plaintiff’s complaint alleged, among other things, that defendants (1) failed or refused to accommodate his parking needs when they delayed the installation of handicapped parking signs in his parking area and when they refused to paint his parking area blue, (2) failed or refused to provide a rear patio ramp to
 
 *408
 
 accommodate plaintiffs need to have an alternative exit from the apartment in the event of fire or other hazard, (3) failed to remove snow and ice from the sidewalk within a reasonable amount of time thereby requiring plaintiff to remove the snow and ice with his hands and arms so that he could return to his apartment,
 
 [8]
 
 (4) actively discriminated against plaintiff by making a reference to “you people,”
 
 [9]
 
 and (5) retaliated against plaintiff for requesting the above accommodations by obtaining a judgment against him for nonpayment of rent,
 
 [10]
 
 by assessing a $50 furniture moving fee,
 
 [11]
 
 and by failing to give him adequate
 
 *409
 
 notice of a government inspection of plaintiffs apartment.
 
 [12]
 

 Plaintiff also sought a temporary restraining order and a preliminary injunction to enjoin defendants from further retaliation and discrimination and to order defendants to promptly remove any snow and ice from plaintiffs sidewalk area. The court entered the temporary restraining order, and after an eviden-tiary hearing, the court opined that plaintiff was entitled to reasonable accommodations under the pwdcra. The court was convinced that discrimination and retaliation had occurred and that defendants had failed to provide reasonable accommodations as requested with respect to the removal of snow and ice and the rear patio ramp leading from plaintiffs apartment. The court subsequently entered a preliminary injunction ordering defendants to refrain from attempting to constructively evict plaintiff from the premises, to remove snow and ice from plaintiffs apartment walkway within a reasonable time on a priority basis, and to construct a new rear ramp or modify the existing ramp for plaintiffs patio door.
 

 After the close of discovery, defendants moved for summary disposition, arguing that the pwdcra did not
 
 *410
 
 require a landlord to make every accommodation that a disabled tenant requested, but rather the pwdcra merely required that housing be made equally available to disabled tenants and that property owners reasonably accommodate a disabled tenant in the rules, policies, practices, and services provided. Defendants sought summary disposition regarding plaintiffs claims that assumed a duty that defendants believed was not imposed under the pwdcra and further sought summary disposition regarding those claims that were not supported by sufficient evidence. The trial court denied defendants’ motions for summary disposition and for reconsideration. This Court denied defendants’ application for leave to bring an interlocutory appeal from those orders.
 

 Thereafter, a jury trial commenced on plaintiff’s claims. At the conclusion of proofs, the trial court denied defendants’ motion for a directed verdict, but directed a verdict in favor of plaintiff with regard to defendants’ failure to construct a rear patio ramp. The jury ultimately found in favor of plaintiff. The jury returned its findings as follows: (1) regarding the directed verdict for defendants’ failure to provide the reasonable accommodation of a rear patio ramp, plaintiff was awarded $500,000 in actual damages, (2) because defendants failed to provide an accommodation requested by plaintiff that was reasonable and necessary in order to allow plaintiff an equal opportunity to use and fully enjoy his apartment, plaintiff was awarded $300,000 in actual damages and $250,000 in exemplary damages, (3) because defendants refused to provide an accommodation for plaintiff’s disability in regard to defendants’ rules, policies, practices, or services that was reasonable and necessary in order
 
 *411
 
 to allow plaintiff an equal opportunity to use and fully enjoy his apartment, plaintiff was awarded $300,000 in actual damages and $250,000 in exemplary damages, (4) because defendants unlawfully discriminated against plaintiff in the terms, conditions, or privileges associated with the renting of plaintiffs apartment, or in the furnishing of the facilities or the services in connection with the renting of plaintiff’s apartment, plaintiff was awarded $500,000 in actual damages and $300,000 in exemplary damages, and (5) because defendants unlawfully retaliated against plaintiff because of plaintiff’s opposition to defendants’ alleged violation of the PWDCRA, or for plaintiff’s having made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under the PWDCRA, plaintiff was awarded $200,000 in actual damages and $200,000 in exemplary damages. In addition, the jury awarded plaintiff $750,000 in actual future damages on the retaliation claim and $750,000 in exemplary future damages, the present value of which is $518,982.90 each. The trial court entered an order of judgment in accordance with the jury verdict in the amount of $3,837,965.80, plus costs and attorney fees in the amount of $8,135.96 and $102,095, respectively. After the trial court denied defendants’ motion for a new trial or remittitur, defendants appealed by right to this Court.
 

 H. ANALYSIS
 

 A. SCOPE OF LANDLORD’S HOUSING ACCOMMODATION DUTY
 

 In this case, we are first asked to decide the scope of the legal duty imposed on apartment owners/
 
 *412
 
 landlords to accommodate tenants with disabilities after leasing an apartment to them. Defendants argue that the pwdcra does not require a landlord to make every accommodation that a tenant with a disability requests but only requires those reasonable accommodations necessary for the tenant’s enjoyment of the premises and then only when the accommodations will not impose an undue hardship on the landlord. Plaintiff takes a broader view and argues that the pwdcra requires the landlord to make every requested accommodation unless the accommodation would impose an undue hardship on the landlord. Statutory inteipretation is á question of law that is reviewed de novo on appeal.
 
 Oakland Co Bd of Co Rd Comm’rs v Michigan Property & Casualty Guaranty Ass’n,
 
 456 Mich 590, 610; 575 NW2d 751 (1998).
 

 The pwdcra, which was enacted in 1976 for the protection of persons with disabilities, is divided into six separate articles. Article 1 contains general provisions, including definitions. Articles 2, 3, 4, and 5 specifically address the protected areas of employment (article 2), public accommodations or public service (article 3), education (article 4), and housing (article 5). Article 6 is the administration section that, among other things, prohibits retaliation against persons who engage in protected activities and addresses the issue of damages. In the instant case, plaintiff argues that defendants violated certain provisions of articles 1, 5, and 6 of the pwdcra as follows: (1) defendants refused to accommodate his disability, MCL 37.1102 and MCL 37.1506a, (2) defendants actively discriminated against him on the basis of his disability or because of his use of adaptive devices, MCL 37.1502, and (3) defendants retaliated against him for asserting his
 
 *413
 
 rights under the pwdcra, MCL 37.1602. We will first discuss both plaintiff’s claim that defendants refused to accommodate his disability and the interplay between MCL 37.1102 and MCL 37.1506a.
 

 Subsection 102(1) of article 1, MCL 37.1102(1), provides that “[t]he opportunity to obtain . . . housing . . . without discrimination because of a disability is guaranteed by this act and is a civil right.” MCL 37.1102(2) further provides that “a person shall accommodate a person with a disability for purposes of . . . housing unless the person demonstrates that the accommodation would impose an undue hardship.” As previously stated, plaintiff reads MCL 37.1102(2) as establishing that there is “an affirmative non-qualified duty to accommodate a disabled person unless it would impose an undue hardship.” Defendants read MCL 37.1102(2) in conjunction with article 5 (the housing article), particularly certain subsections contained in MCL 37.1506a, and believe that § 506a defines the duties to accommodate that are imposed on defendants. Section 506a of the housing article provides in pertinent part:
 

 (1) A person shall not do any of the following in connection with a real estate transaction:
 

 (a) Refuse to permit, at the expense of the person with a disability, reasonable modifications of existing premises occupied or to be occupied by the person with a disability if those modifications may be necessary to afford the person with a disability full enjoyment of the premises. In the case of a rental, the landlord may, if reasonable, make permission for a modification contingent on the renter’s agreement to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.
 

 
 *414
 
 (b) Refuse to make reasonable accommodations in rules, policies, practices, or services, when the accommodations may be necessary to afford the person with a disability equal opportunity to use and enjoy residential real property. [MCL 37.1506a(l)(a) and (b).]
 

 In construing the statutory provisions contained in the pwdcra, we construe the language reasonably, keeping in mind the purpose of the act.
 
 Draprop Corp v Ann Arbor,
 
 247 Mich App 410, 415; 636 NW2d 787 (2001). The purpose of the pwdcra is to ensure that all persons be accorded equal opportunities to obtain housing.
 
 Chiles v Machine Shop, Inc,
 
 238 Mich App 462, 473; 606 NW2d 398 (1999);
 
 Adkerson v MK-Ferguson Co,
 
 191 Mich App 129, 137; 477 NW2d 465 (1991). The Civil Rights Act, MCL 37.2101
 
 et seq.,
 
 is remedial and is to be liberally construed to effectuate its ends.
 
 Eide v Kelsey-Hayes Co,
 
 431 Mich 26, 34; 427 NW2d 488 (1988);
 
 Corley v Detroit Bd of Ed,
 
 246 Mich App 15, 23; 632 NW2d 147 (2001). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature’s intent.
 
 Fran-kenmuth Mut Ins Co v Marlette Homes, Inc,
 
 456 Mich 511, 515; 573 NW2d 611 (1998). Statutes are to be construed as a whole,
 
 Macomb Co Prosecutor v Murphy,
 
 464 Mich 149, 159; 627 NW2d 247. (2001), and courts should presume that every word has some meaning and should avoid any construction that would render any part of a statute surplusage or nugatory,
 
 Hoste v Shanty Creek Management, Inc,
 
 459 Mich 561, 574; 592 NW2d 360 (1999). Further, provisions must be read in the context of the entire statute so as to produce an harmonious whole.
 
 Macomb Co Prosecutor, supra.
 

 
 *415
 
 We conclude, contrary to the plaintiffs argument, that a landlord is not required to accommodate a disabled tenant’s every request unless it imposes an undue hardship. Instead, the landlord’s duty to accommodate requires those reasonable accommodations necessary for the disabled tenant’s enjoyment of the premises as they relate to “rules, policies, practices, or services” and then only when the accommodations will not result in an undue hardship on the landlord. We further conclude that when an accommodation request involves reasonable “modifications of existing premises occupied,” a landlord cannot refuse to allow the modifications at the expense of the person with a disability if the modifications may be necessary to afford the tenant full enjoyment of the premises and the modifications do not result in an undue hardship on the landlord. Keeping in mind that the purpose of the pwdcra is to provide plaintiff an equal opportunity to obtain housing,
 
 Draprop,
 
 supra; Chiles, supra, we construe § 506a together with § 102 to reach these conclusions. To do otherwise, as plaintiff requests, would render § 506a surplusage or nugatory.
 
 Hoste, supra.
 

 Our Supreme Court’s decision in
 
 Rourk v Oakwood Hosp Corp,
 
 458 Mich 25; 580 NW2d 397 (1998), supports our conclusions. In
 
 Rourk, id.
 
 at 32-33, the Supreme Court examined the pwdcra and determined that specific duties set forth in MCL 37.1210 of the employment article of the pwdcra defined the general duty to accommodate under MCL 37.1102. The Legislature added MCL 37.1210 in 1990 to delineate more specifically the scope of the employer’s duty to accommodate a disabled employee. See
 
 Rourk, supra
 
 at 33; 1990 PA 121, § 1, effective June 25, 1990. The
 
 *416
 
 duties outlined in § 210 of the employment article are more specific than the general duties expressed in § 102 and are thus more similar to the specific duties provided in § 506a of the housing article, which was added by 1992 PA 123, § 1, effective June 29, 1992. Thus, applying the Supreme Court’s rationale in
 
 Rourk
 
 to the instant matter, we construe § 506a as the Legislature’s effort to provide specific guidance regarding the scope of the accommodation duty that is imposed on a landlord with respect to housing under MCL 37.1102.
 
 [13]
 
 The accommodation provisions stated in § 506a of the pwdcra indicate an attempt to balance the rights of the tenant with a disability with the landlord’s rights.
 
 Rourk, supra
 
 at 35.
 

 Although we find no published Michigan cases directly on point concerning the claims raised in the present case,
 
 [14]
 
 an abundance of federal precedent exists with respect to the Fair Housing Amendments Act (fhaa), 42 USC 3601
 
 et seq.,
 
 and housing cüscrimi-
 
 *417
 
 nation. Although this Court is not compelled to follow federal precedent in interpreting Michigan law, this Court may turn to federal precedent for guidance.
 
 Sumner v Goodyear Tire & Rubber Co,
 
 427 Mich 505, 525; 398 NW2d 368 (1986). Analogy to federal law supports our conclusion that, contrary to the plaintiff’s assertion, a landlord is not required to make every requested accommodation. Because of the similarities between the pwdcra and the fhaa, we find persuasive the following principles as expressed in federal case law.
 
 Michalski v Bar-Levav,
 
 463 Mich 723, 733, n 13; 625 NW2d 754 (2001);
 
 Chmielewski v Xermac, Inc,
 
 457 Mich 593, 601-602; 580 NW2d 817 (1998).
 

 The statutory language contained in MCL 37.1506a(l)(a) and (b) of the pwdcra parallels the language found in the FHAA, 42 USC 3604(f)(3),
 
 [15]
 
 which provides:
 

 [Discrimination includes—
 

 (A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition
 
 *418
 
 that existed before the modification, reasonable wear and tear excepted.
 

 (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling^]
 

 Federal case law interpreting the above provisions of the fhaa establishes that the fhaa does not require that a disabled tenant’s requested accommodation be satisfied whenever convenient or desired, but only when it is “necessary.”
 
 Sporn v Ocean Colony Condominium Ass’n,
 
 173 F Supp 2d 244, 249 (D NJ, 2001);
 
 Gavin v Spring Ridge Conservancy, Inc,
 
 934 F Supp 685, 687 (D Md, 1995), aff’d 92 F3d 1178 (CA 4, 1996). Further, an accommodation should not extend a preference to disabled tenants relative to other tenants, as opposed to affording them equal opportunity, and accommodations that go beyond affording a tenant with a disability an opportunity to use and enjoy a dwelling are not required by the fhaa.
 
 Spom, supra
 
 at 250;
 
 Hubbard v Samson Management Corp,
 
 994 F Supp 187, 190 (SD NY, 1998). “A failure to provide a reasonable accommodation only becomes unlawful discrimination when it impairs a person’s use and enjoyment of a dwelling.”
 
 Samuelson v Mid-Atlantic Realty Co, Inc,
 
 947 F Supp 756, 760 (D Del, 1996). Whether an accommodation is “reasonable” is to be determined case by case.
 
 Jankowski Lee & Associates v Cisneros,
 
 91 F3d 891, 896 (CA 7, 1996);
 
 Hovsons, Inc v Brick Twp,
 
 89 F3d 1096, 1104 (CA 3, 1996);
 
 United States v California Mobile Home Park Management Co,
 
 29 F3d 1413, 1418 (CA 9, 1994);
 
 Spom, supra
 
 at 250. The Michigan Supreme Court has stated that “ [i]t is for the courts to decide
 
 *419
 
 whether a proposed accommodation is reasonable.”
 
 Rourk, supra
 
 at 36, n 5.
 

 Under 42 USC 3604(f)(3)(B), which parallels MCL 37.1506a(l)(b), affirmative steps are required to change rules, practices, policies, or services if such steps are necessary to allow a person with a disability an opportunity to reside in the community.
 
 Samuelson, supra
 
 at 759. Similar to subsection 506a(l)(b) of the pwdcra, subsection 3604(f)(3)(B) of the fhaa does not specify that the tenant with a disability should bear any financial burden imposed with respect to accommodations in rules, policies, practices, or services.
 
 Calif Mobile Home Park, supra
 
 at 1416, n 1. Thus, a landlord can be required to incur reasonable costs to accommodate a plaintiff’s disability provided the accommodation does not pose an undue hardship on the landlord.
 
 Shapiro v Cadman Towers, Inc,
 
 51 F3d 328, 335 (CA 2, 1995);
 
 Calif Mobile Home Park, supra
 
 at 1416, 1417.
 

 With respect to subsection 3604(f)(3)(B) of the fhaa and accommodations in rules, policies, practices, or services, federal courts have applied this provision and recognized on several occasions that a tenant with a disability is entitled to, for example, a reserved parking space adjacent to the tenant’s building even though the reservation of parking spots is contrary to the landowner’s policy regarding parking. See, e.g.,
 
 Jankowski Lee, supra
 
 (after tenant with multiple sclerosis who had trouble walking and controlling his bladder alleged that the apartment owners refused to make a reasonable accommodation in their rules, policies, practices, and services related to “first come, first serve” parking, the court held that the tenant was entitled to a parking space close to his building);
 
 *420
 

 Shapiro, supra
 
 (owner of cooperative apartment complex was obligated under the fhaa to provide a parking space, contrary to owner’s “first come, first serve” parking policy, to disabled tenant with multiple sclerosis who suffered from severe bladder problems and had difficulty walking);
 
 Hubbard, supra
 
 (court decided that tenant with disability was entitled to a free parking space near her apartment complex as a reasonable accommodation under the fhaa even though the reservation of parking spots was contrary to the owner’s “first-come, first serve” policy because the accommodation equalized the tenant’s opportunity to use and enjoy her dwelling, the accommodation was not unduly burdensome to the landlord, and the accommodation did not inappropriately advantage the tenant relative to other tenants); see, also,
 
 Calif Mobile Home Park, supra
 
 (court held that the duty imposed under 42 USC 3604(f)(3)(B) of the fhaa to make “reasonable accommodations in rules” on behalf of persons with disabilities may require a landlord to assume a reasonable financial burden in order to accommodate a disabled resident such as in an instance where a fee is charged to all residents for guest parking, but the disabled resident requires the daily presence of a home health care aide).
 

 To determine whether a requested accommodation is required under subsection 3604(f)(3)(B) of the FHAA, three elements must be analyzed: (1) “ ‘reasonable,’ ” (2) “ ‘equal opportunity,’ ” and (3) “ ‘necessary.’ ”
 
 Howard v Beavercreek,
 
 276 F3d 802, 806 (CA 6, 2002). “An accommodation is ‘reasonable’ when it imposes no ‘fundamental alteration in the nature of the program’ or ‘undue financial and administrative burdens.’ ”
 
 Id.
 
 (citation omitted); see, also,
 
 Smith &
 
 
 *421
 

 Lee Associates, Inc v City of Taylor, Michigan,
 
 102 F3d 781, 795 (CA 6, 1996). “Equal opportunity” under the fhaa is defined as “ ‘giving handicapped individuals the right to choose to live in single-family neighborhoods, for that right serves to end the exclusion of handicapped individuals from the American mainstream.’ ”
 
 Howard, supra
 
 at 806 (citation omitted); see, also,
 
 Smith, supra
 
 at 794. Linked to the goal of equal opportunity is the term “necessary.”
 
 Id.
 
 In order to prove that an accommodation is “necessary,” “ ‘[plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice.’ ”
 
 Howard, supra
 
 at 806 (citation omitted); see, also,
 
 Smith, supra
 
 at 795;
 
 Bronk v Ineichen,
 
 54 F3d 425, 429 (CA 7, 1995) (“the concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff’s quality of life by ameliorating the effects of the disability”). In addition to the above definitions, this Court has defined “accommodation” as “ ‘something supplied for convenience or to satisfy a need.’ ”
 
 [16]
 

 Lindberg v Livonia Public Schools,
 
 219 Mich App 364, 367, n 2; 556 NW2d 509 (1996), quoting
 
 Webster’s Seventh New Collegiate Dictionary
 
 (1972); see, also,
 
 Frazier v Grand Ledge, Michigan,
 
 135 F Supp 2d 845, 856 (WD Mich, 2001) (the definition of “accommodation,” according to the
 
 American Heritage Dictionary
 
 (3d ed, 1996), p 11, is “ ‘[something that meets a need’ ”). Moreover, “[t]he requirement of reasonable accommodation does not entail an obligation to do everything
 
 *422
 
 humanly possible to accommodate a disabled person . . .
 
 Bronk, supra
 
 at 429. “[S]ome accommodations may not be reasonable under the circumstances . . ..”
 
 Id.
 

 In contrast to 42 USC 3604(f)(3)(B), subsection 3604(f)(3)(A) of the fhaa, like subsection 506a(l)(a) of the pwdcra, requires landlords to permit “reasonable modifications of existing premises occupied” if the resident with a disability pays the cost of such modifications.
 
 Calif Mobile Home Park, supra
 
 at 1416, n 1. In the case of
 
 Spom, supra
 
 at 248, the plaintiffs alleged that the defendants had failed to reasonably accommodate one plaintiff’s disability because the defendants had not provided handicapped access to the building’s entrance or common area restrooms during the course of renovations. After concluding that the plaintiffs had failed to present sufficient evidence to survive a motion for summary disposition relating to the inadequacy of the defendants’ renovations, the court also cited 42 USC 3604(f)(3)(A) relating to the provision regarding modifications need only be permitted “at the expense of the handicapped person” and stated that there was no evidence that the plaintiffs had ever offered to pay for the modifications to the common area restrooms and the facility entrance that would have allowed handicapped access to the building.
 
 Sporn, supra
 
 at 249, n 1.
 

 In
 
 United States v Freer,
 
 864 F Supp 324, 325 (WD NY, 1994), the disabled complainant alleged that the defendants refused to allow her to install a wheelchair ramp at her own expense to gain access to her mobile home located in the defendants’ mobile home park. The court specifically quoted the “at the
 
 *423
 
 expense of the handicapped person” language in 42 USC 3604(f)(3)(A) and recognized that the plaintiff was assuming the construction costs for the requested wheelchair ramp. In holding that the complainant was allowed to install the ramp at her expense, the court determined that the defendants would suffer no undue hardship and that their refusal to permit installation of the ramp had denied the complainant “an equal opportunity to use and enjoy her home.”
 
 Freer, supra
 
 at 326.
 

 Relying on the second sentence of MCL 37.1506a(l)(a), which refers to a renter restoring the “interior” of the premises in exchange for the landlord’s approval for modifications, the instant plaintiff argues that “existing premises occupied” in the first sentence refers only to the interior premises of a tenant’s dwelling. We disagree. Both sentences of subsection 506a(l)(a) were enacted at the same time. Had the Legislature intended to include the word “interior” in the first sentence, it would have done so just as it did in the second sentence. Further, although we could find no definition of “premises” in either article 5 of the pwdcra or the fhaa, the Code of Federal Regulations that interprets the fhaa does provide a definition of “premises” as it relates to the instant matter. As related to the language of “reasonable modifications of existing premises occupied,”
 
 [17]
 
 24 CFR 100.201 defines “premises” as “the interior or exterior spaces, parts, components or elements of a building, including individual dwelling units and the public and common use areas of a building.”
 
 Howard v Beavercreek,
 
 
 *424
 
 108 F Supp 2d 866, 874-875 (SD Ohio, 2000), aff'd 276 F3d 802 (CA 6, 2002).
 

 B. APPLICATION OF HOLDING TO THE PRESENT CASE
 

 (1) THE TRIAL COURT’S JURY INSTRUCTIONS
 

 Defendants assert that a new trial should be granted on the basis of erroneous jury instructions. We agree.
 
 [18]
 
 On appeal, claims of instructional error are reviewed de novo.
 
 Case v Consumers Power Co,
 
 463 Mich 1, 6; 615 NW2d 17 (2000).
 

 Jury instructions should be reviewed in their entirety, not extracted piecemeal to establish error in isolated portions.
 
 Lansing v Hartsuff,
 
 213 Mich App 338, 348; 539 NW2d 781 (1995). Reversal is not required unless the failure to do so would be inconsistent with substantial justice. MCR 2.613(A);
 
 Case, supra.
 
 If the court gave conflicting instructions, one of which was erroneous, the jury is presumed to have followed the erroneous instruction.
 
 Sudul v Ham-tramck,
 
 221 Mich App 455, 461; 562 NW2d 478 (1997). There is no error requiring reversal if the parties’ theories and the applicable law were adequately and fairly presented to the jury.
 
 Murdock v Higgins,
 
 454 Mich 46, 60; 559 NW2d 639 (1997).
 

 After reviewing the jury instructions in their entirety in the present case, we conclude that improper instructions unfairly influenced and tainted the jury’s verdict. First, the trial court should have given an instruction regarding MCL 37.1506a(l)(a)
 
 *425
 
 that reasonable modifications of existing premises occupied are allowed at the expense of the person with a disability.
 
 [19]
 
 Here, the trial court instructed regarding MCL 37.1506a(l)(b), which relates to “rules, policies, practices, or services . . . .” No instruction regarding subsection 506a(l)(a) was given to the jury. Although defendants attempted to assert subsection 506a(l)(a) as support for a theory that they had no duty to build a patio ramp, the trial court apparently dismissed defendants’ assertion because it was not raised as an affirmative defense. This was error because defendants were not seeking to raise an affirmative defense; defendants were directly controverting plaintiff’s establishment of a prima facie case under that subsection and plaintiff’s entitlement to prevail.
 
 Stanke v State Farm Mut Automobile Ins Co,
 
 200 Mich App 307, 312-313; 503 NW2d 758 (1993).
 

 Further, the trial court gave instructions regarding defendants’ duty in a broader manner than our holdings in the instant case allow. For example, the court instructed that “[a] landlord has a duty to accommodate a tenant with a disability when those accommodations were necessary to afford the tenant an equal opportunity to use and fully enjoy his apartment and the surrounding residential property.” Again, the trial court did not distinguish between modifications to the premises and modifications to “rules, policies, practices, or services . ...” In addition, although the pwdcra does not define “reasonable accommoda
 
 *426
 
 tions,” the trial court erroneously gave a much broader definition in accordance with plaintiffs interpretation of the pwdcra than the Legislature intended.
 

 In addition, the trial court erroneously instructed the jury that plaintiff was entitled to exemplary damages. In
 
 Eide, supra
 
 at 28, 38 (Boyle, J.), 55-56 (Griffin, J., concurring in part and dissenting in part), our Supreme Court held that exemplary damages are not permitted under the Civil Rights Act, MCL 37.2101
 
 et seq.
 
 The Supreme Court reasoned that there was no express provision in the Civil Rights Act for exemplary damages and there was no basis for inferring a legislative intent to provide such an unusual remedy.
 
 Eide, supra
 
 at 55. Likewise, because the PWDCRA does not expressly provide for exemplary damages, such damages are not allowed. See MCL 37.1606.
 

 C2) PLAINTIFF'S ACCOMMODATIONS REQUESTS
 

 To establish a prima facie case that he was denied a reasonable accommodation, plaintiff must prove that (1) he is disabled as defined under the pwdcra, (2) defendants knew of his disability or should reasonably be expected to know of it, (3) an accommodation of his disability “may be necessary” pursuant to MCL 37.1506a(l)(a) or (b) to afford him an equal opportunity to use and enjoy the premises and did not present an undue hardship on defendants under MCL 37.1102(2), and (4) defendants refused to make such an accommodation. See
 
 Hall v Hackley Hosp,
 
 210 Mich App 48, 53-54; 532 NW2d 893 (1995);
 
 United States v California Mobile Home Park Management Co,
 
 107 F3d 1374, 1380 (CA 9, 1997).
 

 
 *427
 
 In the instant case, plaintiff is physically disabled within the meaning of the pwdcra, MCL 37.1103, his disability requires him to use an adaptive device, i.e., a motorized scooter, and defendants knew that plaintiff had a disability.
 
 [20]
 
 It also appears that defendants do not claim that plaintiff’s requested accommodations would impose an undue hardship. Thus, we must determine whether plaintiff’s requests were related to “rules, policies, practices, or services” or “modifications of existing premises occupied” that were reasonable accommodations necessary for his enjoyment of the premises.
 

 (a) PARKING SIGNS AND BLUE PAINT
 

 Plaintiff’s request for parking signs and blue paint relates to physical modifications of the existing premises rather than “rules, policies, practices, or services . . . .” Thus, although defendants could not refuse to permit the signs and paint if they were necessary for plaintiff’s enjoyment of the premises, plaintiff would be responsible for the costs under § 506a.
 
 [21]
 
 Defendants installed the signs at their own expense for plaintiffs parking spaces and the cutaway closest to his parking spaces and building within about one month after plaintiff’s first written request. As indi
 
 *428
 
 cated in plaintiffs own testimony at trial, the signs virtually eliminated at least “ninety nine point nine percent” of the problems. Defendants went beyond their statutoiy duty by installing the signs at their own expense. Moreover, although defendants were not permitted to refuse plaintiffs request for blue paint if it were necessary to afford plaintiff full enjoyment of the premises, plaintiff himself testified that blue paint was unnecessary because his problems were virtually eliminated once the signs were installed. See
 
 Bronk, supra
 
 at 429 (“some accommodations may not be reasonable under the circumstances”). Thus, defendants did not unlawfully discriminate with respect to the blue paint.
 
 Samuelson, supra
 
 at 760 (“A failure to provide a reasonable accommodation only becomes unlawful discrimination when it impairs a person’s use and enjoyment of a dwelling.”); see, also,
 
 Gavin, supra
 
 at 687 (an accommodation is not required wherever convenient or desired, but only where necessary). After examining all the evidence, there is no factual question that exists on which reasonable minds could differ,
 
 Cacevic v Simplimatic Engineering Co (On Remand),
 
 248 Mich App 670, 679-680; 645 NW2d 287 (2001), consequently, the trial court erred in denying defendants’ motion for a directed verdict on this issue because defendants had no duty to physically modify the premises.
 
 [22]
 

 
 *429
 
 (b) SNOW AND ICE REMOVAL
 

 Plaintiff’s claim regarding snow and ice removal deals with “rules, policies, practices, or services,” and therefore under subsection 506a(l)(b) defendants could not refuse to make reasonable accommodations with respect to snow and ice removal if it were necessary to afford plaintiff equal opportunity to use and enjoy his residence. Plaintiff argues that defendants failed to modify the snow removal services to accommodate his disability. Defendants claim that the trial court should have granted their motion for a directed verdict on this issue because plaintiff never complained about the snow and ice problem and they did not know that plaintiff was having any type of problem because of the snow and ice. Although this is a close issue, after viewing the testimony and all legitimate inferences from the testimony in the light most favorable to plaintiff (the nonmoving party),
 
 Locke v Pachtman,
 
 446 Mich 216, 223; 521 NW2d 786 (1994), we conclude that the trial court did not err in denying defendants’ motion on this issue.
 

 At trial, defendants presented evidence that although plaintiff had submitted written requests for other accommodations, he had never complained and made a written request regarding the snow and ice removal service.
 
 [23]
 
 Further, defendants presented testi
 
 *430
 
 mony that plaintiff had not complained orally to defendants or their employees, including the maintenance supervisor who was quite friendly with plaintiff. We agree with defendants that the tenant with a disability is in the best position to identify his needs and make specific requests for accommodation.
 
 Lind-berg, supra
 
 at 367 (“[i]t is not reasonable to expect that an institution or an employer will be better aware of the needs of a handicapped individual than the individual himself”).
 

 Although plaintiff did not state to whom he had complained, plaintiff testified that he had complained regarding problems he had with maneuvering his scooter in the snow. Plaintiff described times when he had to get off his scooter after becoming stuck and remove the snow with his arms in order to gain access to his building. Plaintiff testified that the snow and ice were allowed to accumulate for a day or longer before defendants took steps to remove it. There was also testimony from at least one other witness that complaints were made to defendants regarding the lack of snow and ice removal. After resolving the conflicts in the evidence in plaintiffs favor,
 
 Kubczak v Chemical Bank & Trust Co,
 
 456 Mich 653, 663; 575 NW2d 745 (1998), and recognizing the unique opportunity of the jury and the trial court to observe witnesses and the factfinder’s responsibility to determine the credibility and weight of the testimony,
 
 Zee-land Farm Services, Inc v JBL Enterprises, Inc,
 
 219 Mich App 190, 195; 555 NW2d 733 (1996), we cannot say that no factual question exists to the extent that
 
 *431
 
 the trial court should have granted defendants’ motion for a directed verdict regarding this claim,
 
 Michigan Mat Ins Co v CNA Ins Cos,
 
 181 Mich App 376, 380; 448 NW2d 854 (1989).
 

 (3) PATIO RAMP
 

 Defendants had no duty under MCL 37.1506a(l)(a) to physically modify the existing premises and build plaintiff a ramp for his patio. Defendants’ only duty was to allow plaintiff to build the ramp at his own expense if the modification were necessary to afford plaintiff full enjoyment of the premises, which it appears that it was.
 
 [24]
 
 Thus, in this case, defendants actually went beyond their statutory duty to accommodate plaintiff by attempting to build at their own expense a ramp for plaintiff to use in emergency situations within a month of plaintiff’s first written request.
 
 [25]
 
 The trial court erred in directing a verdict in favor of plaintiff on this issue. The court should have granted defendants’ motion for a directed verdict with respect to this issue because defendants had no duty to physically modify the premises.
 

 
 *432
 
 C. ACTIVE DISCRIMINATION AGAINST PLAINTIFF UNDER § 502
 

 Plaintiff asserts that defendants not only refused to accommodate his disability but also actively discriminated against him on the basis of his disability. Defendants argue that they did not intentionally discriminate against plaintiff contrary to MCL 37.1502 of the PWDCRA, which provides in relevant part:
 

 (1) An owner or any other person engaging in a real estate transaction, or a real estate broker or salesman shall not, on the basis of a disability of a buyer or renter, of a person residing in or intending to reside in a dwelling after it is sold, rented, or made available, or of any person associated with that buyer or renter, that is unrelated to the individual’s ability to acquire, rent, or maintain property or use by an individual of adaptive devices or aids:
 

 (b) Discriminate against a person in the terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection with a real estate transaction.
 

 With regard to proving intentional discrimination, our Supreme Court in
 
 DeBrow v Century 21 Great Lakes, Inc (After Remand),
 
 463 Mich 534, 539-540; 620 NW2d 836 (2001), quoting with approval the dissenting opinion of Young, J., in the first unpublished opinion per curiam of the Court of Appeals in that mater, stated:
 

 “Intentional discrimination can be proven by direct and circumstantial evidence. Where direct evidence is offered to prove discrimination, a plaintiff is not required to establish a prima facie case within the
 
 McDonnell Douglas [v Green,
 
 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973),] framework, and the case should proceed as an ordinary civil mat
 
 *433
 
 ter. The shifting burden of proofs as contemplated in
 
 McDonnell Douglas . .
 
 . only applies] to discrimination claims based solely on indirect or circumstantial evidence of discrimination.” [Citations omitted.]
 

 In this case, plaintiff testified that during the course of a confrontation with defendant Dawn Combs, Combs stated: “I don’t know who you people think you are but you are not going to get any special treatment here.” Plaintiff claims that this statement constitutes direct evidence of discrimination. Although “this remark may be subject to varying interpretations,”
 
 DeBrow, supra
 
 at 538, we agree that plaintiff has presented direct evidence of discrimination under the PWDCRA. Further, defendant Combs’ alleged remark occurred before plaintiff was assessed a $50 furniture moving fee, which, as stated below, could be construed as treating plaintiff differentially. Although defendant Combs denied making such a comment, the matter was one of credibility, and it is the jury’s duty to weigh credibility. See
 
 id.
 
 at 540;
 
 Zeeland Farm, supra.
 

 Regarding plaintiff’s presentation of circumstantial evidence of intentional discrimination,
 
 [26]
 
 we find merit in only one of plaintiff’s theories, the $50 furniture moving fee. To prove a prima facie case of intentional handicap discrimination in the terms and conditions of his apartment rental under MCL 37.1502, plaintiff must show that he was a member of a protected class and that he was treated differently from similarly situated members of the unprotected class. See
 
 DeBrow, supra
 
 at 538, n 8;
 
 Lytle v Malady (On Rehearing),
 
 
 *434
 
 458 Mich 153, 172-173 (Weaver, J.), 185 (Brickley, J.); 579 NW2d 906 (1998);
 
 Town v Michigan Bell Telephone Co,
 
 455 Mich 688, 695 (Brickley, J.); 568 NW2d 64 (1997). Although defendants articulated a legitimate, nondiscriminatory reason for the fee (i.e., the caipet installers assessed the fee for moving plaintiffs furniture and defendants just passed the fee along to plaintiff), plaintiff satisfied his burden by showing “that there was a triable issue [of fact] that [defendants’] proffered reasons were not true reasons, but were a mere pretext for discrimination.”
 
 Lytle, supra
 
 at 174 (Weaver, J.). Evidence was presented that the damaged carpet in plaintiff’s apartment that led to the imposition of the furniture moving fee occurred through no fault of plaintiff, defendants had not previously charged a fee like this to other tenants, and defendants never attempted to collect the $50 fee through legal action.
 

 Because we cannot determine from the special verdict form which of plaintiff’s theories the jury relied on to find intentional discrimination, i.e., the theories we have found to provide legitimate evidence of discrimination or those theories such as the one concerning the late inspection notice that we have found presented no evidence of discrimination, we reverse.
 

 D. RETALIATION
 

 Plaintiff argues that he suffered retaliation because of his accommodation requests. Article 6 of the pwd-CRA prohibits retaliation:
 

 A person or 2 or more persons shall not do the following:
 

 (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the
 
 *435
 
 person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [MCL 37.1602(a).]
 

 See, also,
 
 Mitan v Neiman Marcus,
 
 240 Mich App 679, 680-681; 613 NW2d 415 (2000).
 

 To establish a prima facie case of unlawful retaliation under the pwdcra, a plaintiff must establish
 

 “(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an . . . action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse . . . action.”
 
 [Id.
 
 at 681, quoting
 
 DeFlaviis v Lord & Taylor, Inc,
 
 223 Mich App 432, 436; 566 NW2d 661 (1997) (holding that the prima facie elements of a retaliation claim brought under the Civil Rights Act also apply to retaliation claims brought pursuant to the PWDCRA).]
 

 The language of MCL 37.1602(a) indicates that the first step in proving retaliation is demonstrating one of two circumstances. First, the plaintiff must demonstrate that he opposed a violation of the pwdcra. Alternatively, the plaintiff must (1) make a charge, (2) file a complaint, or (3) testify, assist, or participate in an investigation, proceeding, or hearing under the pwdcra. Thus, if a person satisfies the requirements under either of these two prongs of MCL 37.1602(a), then the person is said to be engaging in a “protected activity.” See
 
 Mitán, supra
 
 at 681-682. Further, in order to have a cause of action under MCL 37.1602, when a plaintiff engages in the protected activity by opposing a violation of the pwdcra, then the plaintiff must inform and give notice to the landlord so that the landlord has knowledge that the plaintiff is objecting to the violation of the pwdcra.
 

 
 *436
 
 Plaintiff claims that his requests for signs, paint, snow removal, and a patio ramp constitute oppositions to violations of the act under MCL 37.1602(a) and that defendants retaliated against him by getting a judgment against him for rent, scheduling an inspection of his apartment, and charging him a $50 furniture moving fee. First, we have already concluded that defendants did not violate the pwdcra with regard to parking signs, paint, and the patio ramp. Moreover, our review of the evidence in this case indicates that any request that plaintiff made regarding snow removal did not constitute an opposition to a violation of the PWDCRA, but was merely a request for an accommodation.
 
 [27]
 

 Further, the record fails to demonstrate that before any denial was made regarding a change in defendant’s snow removal policy, plaintiff opposed a violation of the pwdcra or made a charge, filed a complaint, or testified, assisted, or participated in an investigation or proceeding under the PWDCRA. Thus, the evidence does not establish that plaintiff was participating in a protected activity, and this issue is without merit.
 
 Mitán, supra
 
 at 682 (“because plaintiff’s complaints did not state, imply, or raise the specter that plaintiff either opposed a violation of the [PWDCRA] or ‘made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing’ under the act, this evidence does not establish that plaintiff participated in a protected activity”). The trial court erred in not granting defendants’ motion for a directed verdict on this issue.
 

 
 *437
 
 E. REMITTITUR OR A NEW TRIAL
 

 Defendants next argue that they are entitled to a new trial or remittitur because (1) exemplary damages are not authorized by statute, (2) because an award of future damages is unsupported by the evidence, and (3) because the jury’s award of almost $4 million is duplicative and reached far beyond the range of evidence introduced at trial.
 

 With respect to defendants’ first claim concerning exemplary damages, we have already decided that because the pwdcra does not expressly provide for exemplary damages, none may be awarded. In addition, because we are reversing and remanding for a new trial, we need not decide whether the jury’s award was excessive. Regarding the future damages issue, the jury verdict form indicates that future damages were awarded as exemplary damages and as damages on plaintiff’s retaliation claim. Because exemplary damages are not allowed in this case and because plaintiff’s retaliation claim should have been resolved by a directed verdict in favor of defendants, these issues are moot.
 

 F. CUMULATIVE ERRORS
 

 Defendants also argue that they are entitled to a new trial because of the cumulative effect of errors that deprived them of a fair trial. We will address those issues that may arise on retrial.
 
 [28]
 

 
 *438
 
 (1) TENANT RULES AND REGULATIONS
 

 First, defendants claim that the trial court improperly excluded evidence of tenant rules and regulations. We disagree. The decision whether to admit evidence is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion.
 
 Chmielewski, supra
 
 at 614. An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say that there was no justification or excuse for the ruling made,
 
 Ellsworth v Hotel Corp of America,
 
 236 Mich App 185, 188; 600 NW2d 129 (1999), or the “result is so palpably and grossly viola-tive of fact and logic that it evidences perversity of will, a defiance of judgment, or the exercise of passion or bias,”
 
 Barrett v Kirtland Community College,
 
 245 Mich App 306, 325; 628 NW2d 63 (2001).
 

 In this case, it appears that the court excluded the written rules and regulations because plaintiff never signed them and a dispute existed regarding when the rules became effective and whether they were produced during discovery. We cannot say after reviewing this matter that there was no justification for the ruling made,
 
 Ellsworth, supra,
 
 or that the decision was so grossly violative of fact and logic,
 
 Barrett, supra,
 
 that the trial court abused its discretion. Although defendants stated that the rules and regulations should have been admitted because they explained defendants’ reasons for acting as they did with regard to various matters, our review of the record indicates that on several occasions during the trial, defendants explained their reasons for acting as they did toward plaintiff in this case.
 

 
 *439
 
 (2) TESTIMONY OF ROBERT KLOTZ
 

 Defendants also argue that the trial court abused its discretion in allowing plaintiff to introduce the testimony and records of plaintiff’s psychotherapist, Robert Klotz, because they were never produced during discovery and because evidence that defendants offered was excluded by the court on the basis that the evidence was never produced during discovery. The record indicates that Klotz did not respond to requests to be interviewed and deposed during the discovery process. Although defendants subpoenaed Klotz’ records during discovery, they were never produced. Neither were they exchanged as exhibits, as required by pretrial order. However, just before trial commenced, plaintiff produced the records, and defendants objected to their admission. The trial court concluded that plaintiff could introduce Klotz’ testimony and records at trial, indicating that defendants were not surprised. It also allowed defendants to depose Klotz. Thereafter, defendants attempted to introduce evidence such as an invoice showing that parking signs had been ordered before plaintiff spoke to the Northville Township ordinance officer about parking signs and an invoice from the carpet installers for the $50 furniture moving fee. The trial court denied the request to admit the evidence. After reviewing the record, we cannot conclude that the trial court abused its discretion in allowing Klotz’ testimony and records to be introduced.
 
 Chmielewski,
 
 supra;
 
 Barrett, supra.
 
 However, if this matter goes to trial again, we believe the trial court should rule consistently and also allow defendants to introduce their invoices because plaintiff is neither prejudiced nor suiprised by them.
 

 
 *440
 
 (3) TESTIMONY REGARDING DEFENDANT’S EMPLOYEE NAMED “BILL”
 

 Defendants also argue that the trial court erred in allowing plaintiff to testify about out-of-court statements allegedly made by a Swan Harbor employee identified only as “Bill.” Plaintiff asserts that the hearsay statements regarding “Bill” were admissible under the party admission rule of MRE 801(d)(2)(D). We conclude that this testimony should not have been admitted.
 

 MRE 801(d)(2)(D) states that a statement is not hearsay if the statement “is offered against a party and is ... a statement by the party’s agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship [.]” See, also,
 
 Merrow v Bofferding,
 
 458 Mich 617, 633; 581 NW2d 696 (1998). Plaintiff offered this testimony to show defendants’ discriminatory intent against him. Plaintiff testified that he believed that “Bill” was defendant Swan Harbour’s maintenance employee and that “Bill” made the statement that defendants wanted to get rid of him. After reviewing this matter, we conclude that plaintiff failed to establish a sufficient foundation concerning “Bill.”
 
 Merrow, supra.
 
 Plaintiff’s testimony patently failed to establish that “Bill” was an employee of defendant Swan Har-bour, that “Bill” made a statement that concerned a matter within the scope of his employment, and that the statement was made during his employment. MRE 801(d)(2)(D);
 
 Merrow, supra.
 
 Thus, the testimony failed to meet the requirements of MRE 801(d)(2)(D) and should not have been admitted.
 

 
 *441
 
 (4) DOUBLE RECOVERY
 

 Defendants argue that the trial court erred in allowing for a double recovery of damages on the special verdict form.
 
 [29]
 
 Specifically, defendants claim that the jury was erroneously asked to determine generally whether defendants adequately responded to plaintiff’s request for reasonable accommodations and to determine specifically whether defendants refused to accommodate plaintiff in regard to rules, policies, practices, or services.
 
 [30]
 
 We agree. In light of our holdings in this matter, the jury should not have been allowed to determine whether defendants generally failed to provide plaintiff’s requested reasonable accommodations. The jury’s function was to decide whether defendants did not accommodate plaintiff regarding those reasonable accommodations necessary for his enjoyment of the premises as they relate to “rules, policies, practices, or services” and then only when the accommodations would not have resulted in an undue hardship on defendants.
 

 (5) PLAINTIFF’S ATTORNEY’S CLOSING ARGUMENT
 

 Defendants also assert that the trial court erred in denying defendants’ motion for a mistrial after plaintiff’s attorney repeatedly asked the jurors during closing argument to put themselves in the plaintiff’s posi
 
 *442
 
 tion. In light of our decision to reverse and remand for a new trial, we need not address this issue. However, we caution plaintiff’s attorney to refrain from making such comments on retrial.
 

 in. CONCLUSION
 

 In summary, we hold that with respect to article 5 of the pwdcra, the landlord’s duty to accommodate a tenant with a disability requires those reasonable accommodations necessary for the disabled tenant’s enjoyment of the premises as they relate to “rules, policies, practices, or services,” but only when the accommodations will not result in an undue hardship on the landlord. We further hold that when a disabled tenant’s accommodation request involves reasonable “modifications of existing premises occupied,” a landlord cannot refuse to allow the modifications, at the expense of the person with a disability, if the modifications may be necessary to afford the tenant full enjoyment of the premises and the modifications do not result in an undue hardship on the landlord.
 

 We reverse and remand for a new trial on plaintiff’s claims that defendants did not accommodate him with respect to their snow removal policy and that defendants actively discriminated against him by making the “you people” comment and assessing the $50 furniture moving fee. Further, from our review of the record, we conclude that defendants are justified in their request that this matter be remanded for a new trial before a different judge. MCR 2.003(B);
 
 Armstrong v Ypsilanti Charter
 
 Twp, 248 Mich App 573, 596-599; 640 NW2d 321 (2001); see, also,
 
 Feaheny v
 
 Caldwell, 175 Mich App 291, 309-310; 437 NW2d 358 (1989). We do not retain jurisdiction.
 

 [1]
 

 Before plaintiff filed his complaint in July 1998, the pwdcra was known as the Handicappers’ Civil Rights Act. See 1998 PA 20, effective March 12, 1998.
 

 [2]
 

 The parties dispute whether plaintiff was ever offered a barrier-free apartment during his tenancy at Swan Harbour Apartments.
 

 [3]
 

 Evidence was presented that one reason why the apartment management did not want to place the signs was because they were concerned that the signs would have a reverse effect on the parking problem, e.g., a sign placed at plaintiff’s parking spaces would make any disabled person believe that the space was open for use by any handicapped person. According to plaintiff, he responded to this concern by stating that the sign could also indicate that the parking spaces were reserved for private residential parking or specifically for him.
 

 [4]
 

 Defendant Combs denied making this comment.
 

 [5]
 

 Plaintiff stated that he needed uninterrupted access to his apartment and apartment building because he was required to empty his bladder frequently and because of a recent right nephrectomy.
 

 [6]
 

 Defendant Combs also indicated that she contacted Northville Township personnel regarding the placement of the signs before plaintiff filed his complaint.
 

 [7]
 

 Defendants incurred the cost.
 

 [8]
 

 According to plaintiff, before the issuance of a preliminary injunction in this matter on September 10, 1998, Swan Harbour would allow snow and ice to accumulate on the sidewalk outside plaintiff’s apartment building for at least a day after the snow stopped falling. Plaintiffs appellate brief states that the snow was “always” allowed to accumulate. Plaintiff testified that at times he was unable to maneuver his scooter through the snow and ice and would have to get off his scooter and remove the snow or ice with his arms in order to gain access to his apartment building. The maintenance supervisor at Swan Harbour, who was quite friendly with plaintiff, testified that although he had occasionally received complaints from some tenants over the years regarding the removal of snow or ice, he had never received a complaint from plaintiff regarding the snow and ice removal.
 

 [9]
 

 Plaintiff is referring to defendant Combs’ alleged comment “I don’t know who you people think you are but you are not going to get any special treatment here.”
 

 [10]
 

 Plaintiff claimed that Swan Harbour accepted a partial rent payment the day before the court hearing but did not credit his payment until after the judgment was entered. In response, defense witnesses testified that it was the policy of Swan Harbour not to accept partial rent payments once an action was filed. Plaintiff also asserted that defendants retaliated against him by making him think that he did not have to appear in court because he had made a partial rent payment. Swan Harbour’s attorney testified that he would not counsel a tenant not to appear in court if the tenant was going to defend the case, but that he would tell the tenant about the tenant’s right to make a full payment of rent within ten days after entiy of the judgment and then leave it to the tenant to decide whether to appear in court.
 

 [11]
 

 After water seeped into plaintiff’s apartment and ruined the carpet through no one’s fault, the carpet was replaced in November 1997. Defen
 
 *409
 
 dants charged plaintiff a $50 furniture moving fee relating to the placement of the new carpet. Plaintiff claimed that this $50 was charged in retaliation for his request for accommodations. Defendants claimed that the carpet installers charged an additional $50 for labor because they had to move some of plaintiffs furniture in order to lay the carpet. Defendants stated that they simply passed this fee along to plaintiff.
 

 [12]
 

 Plaintiff claimed that in October 1997, defendants attempted to schedule an inspection of his apartment with less than twenty-four hours’ notice of their intent to inspect the premises. In response, defendant Combs testified that the same letter was sent to all apartment residents explaining that Swan Harbour had no control over the timeliness of the notice because Swan Harbour was subject to the government’s surprise inspections.
 

 [13]
 

 We recognize that subsection 102(2) specifically makes an exception for the employment article and not the housing article by stating that “[e]xcept as otherwise provided in article 2, a person shall accommodate a person with a disability ■ ■ . unless . . . the accommodation would impose an undue hardship.” The article 2 exception stated in subsection 102(2) was added in 1990 at the same time § 210 was added to demonstrate the scope of employment accommodations intended. 1990 PA 121, § 1, effective June 25, 1990. Section 506a was added in 1992. 1992 PA 123, § 1, effective June 29, 1992. Although the Legislature did not add the same qualifying language in § 102 with respect to article 5, we do not believe that this affects our determination that § 102 should be read together with § 506a.
 

 [14]
 

 In fact, we found only one case that addressed housing discrimination under the pwdcra regarding §§ 102 and 502.
 
 Armstrong v Senior Citizens Housing of Ann Arbor, Inc,
 
 112 Mich App 804; 317 NW2d 255 (1982).
 
 Armstrong
 
 involved the defendant owner/landlord’s refusing to rent an apartment to the disabled plaintiff. That is not the case here. Further, the
 
 Armstrong
 
 Court noted that because subsection 102(2) did not take effect until 1981, it was inapplicable to the plaintiffs action that was filed in 1979.
 
 Armstrong
 
 is not helpful in the instant matter.
 

 [15]
 

 It appears from the Michigan legislative analysis that MCL 37.1506a was added to article 5 of the pwdcra in order to become compliant with the FHAA’s 1988 amendments of the federal Fair Housing Act, which included 42 USC 3604(f)(3). House Legislative Analysis, HB 5029, December 4, 1991, Second Analysis. Courts may examine the legislative history of an act as well as the history of the time during which the act was passed to ascertain the reason for the act.
 
 DeVormer v DeVormer,
 
 240 Mich App 601, 607; 618 NW2d 39 (2000).
 

 [16]
 

 The Legislature has failed to define “accommodation” in the pwdcra.
 
 Bourk, supra
 
 at 29, 36.
 

 [17]
 

 42 USC 3604(f)(3)(A) is substantially identical with 24 CFR 100.203(a).
 

 [18]
 

 We recognize that the trial court did not have the benefit of our holdings in this decision regarding the pwdcra as it relates to housing discrimination claims.
 

 [19]
 

 We note that because we hereinafter decide that plaintiff’s claims regarding physical modifications to the premises, i.e., signs, paint, and patio ramp, should have been disposed of by a directed verdict in favor of defendants, it appears that an instruction regarding MCL 37.1506a(l)(a) (modifications of existing premises occupied at plaintiffs expense) will be unnecessary on retrial.
 

 [20]
 

 To establish a prima facie case of discrimination under the pwdcra, a plaintiff must first show that a disability exists as defined by the pwdcra.
 
 Michalski, supra
 
 at 730;
 
 Chmielewski, supra
 
 at 602.
 

 [21]
 

 We note that MCL 37.1506a does not state that a person with a disability would be responsible for restoring the “exterior” of the premises once modifications are completed and the tenant has vacated the premises. Although we express no opinion regarding this issue, this would appear to indicate that, in some instances, a landlord may bear some expense if the landlord desires to have the exterior modifications removed after a tenant has moved.
 

 [22]
 

 Contrary to plaintiffs assertion that defendants’ attempts to accommodate him should not be recognized, we note that before this legal dispute erupted between the parties, defendants made some accommodations for plaintiff, including budding a ramp outside plaintiff’s building so that he could gain access to his apartment and designating parking spaces to accommodate plaintiffs van in 1996. See
 
 Spom, supra
 
 at 249 (a court should consider a defendant’s evidence that relates to the reasonableness
 
 *429
 
 of the efforts to accommodate the person with a disability). Although this appears to be the case because defendants assert that they had no duty to even construct the outside ramp to plaintiffs building in 1988 pursuant to MCL 37.1506a(l)(a) and (c), which deals with ramps being required for dwellings constructed after March 13, 1991, we decline to render an opinion on this matter because it is not an issue in this case.
 

 [23]
 

 Although no similar provision exists with respect to housing, with respect to employment, a person who wants to bring a cause of action under the pwdcra for failure to accommodate must advise the employer in
 
 *430
 
 writing of the need for accommodation. MCL 37.1210(18);
 
 Petzold v Borman’s, Inc,
 
 241 Mich App 707, 716; 617 NW2d 394 (2000).
 

 [24]
 

 In his written letter to defendants and in his complaint, plaintiff stated that he needed the patio ramp as an alternative exit from the apartment in the event of fire or other hazard. At trial and on appeal, plaintiff claimed that he needed the patio ramp so that he could use the patio like any other tenant without a disability. Regardless of the intended use, this does not change our conclusion that plaintiff was required to incur the expense of any reasonable physical modifications.
 

 [25]
 

 In their appellate brief, defendants state that after trial and in an effort to comply with the terms of the permanent injunction, they, at plaintiff’s insistence, replaced plaintiff’s cement patio with a new one that sloped from the patio door to the edge of the grass. Defendants further state that plaintiff was evicted several months later for nonpayment of rent and that the new tenants have a patio that is essentially unusable because of the slope.
 

 [26]
 

 The burden-shifting analysis under
 
 McDonnell Douglas, supra,
 
 applies to pwdcra claims.
 
 Hall v McRea Corp,
 
 238 Mich App 361, 371; 605 NW2d 354 (1999), remanded on other grounds 465 Mich 919 (2001).
 

 [27]
 

 We note, in any event, that this would also apply to any requests that plaintiff made regarding signs, paint, and a patio ramp.
 

 [28]
 

 Because plaintiffs claims regarding the parking signs and paint are no longer an issue in this matter, the issue regarding plaintiffs hearsay testimony with respect to Hugh Carpenter, the Northville Township ordinance officer who inspected the curb cutaway and plaintiffs parking spaces, is moot.
 

 [29]
 

 With regard to defendants’ assertion that the jury also was asked to determine whether defendants discriminated against plaintiff and whether defendants retaliated against plaintiff when both claims were based on the same evidence, we conclude that this issue is moot in light of our conclusion that there is no merit to the retaliation claim.
 

 [30]
 

 The jury awarded $300,000 with regard to its general determination and another $300,000 with regard to its more specific determination regarding rules, policies, practices, or servicés.