NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0539n.06

No. 09-2061

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 03, 2011*

LEONARD GREEN, Clerk

PAUL FINDLEY,                                  )
                                               )
    Plaintiff-Appellant,                       )
                                               )   ON APPEAL FROM THE UNITED
v.                                             )   STATES DISTRICT COURT FOR THE
                                               )   EASTERN DISTRICT OF MICHIGAN
UNITED PARCEL SERVICE,                         )
                                               )
    Defendant-Appellee.                        )

Before: COOK, McKEAGUE, and GRIFFIN, Circuit Judges.

COOK, Circuit Judge. After the United Parcel Service, Inc. (UPS) fired Paul Findley, a seasoned worker, he sued his former employer for discrimination and retaliation in violation of the Michigan Persons with Disabilities Civil Rights Act (the "Act"), Mich. Comp. Laws §§ 37.1101–37.1607. On appeal, Findley challenges the district court's grant of summary judgment to UPS on his retaliation claim. Because he failed to establish causation, an element of the prima facie case for retaliation, we affirm.

I.

UPS hired Findley, a right-hand amputee, in 1992. Over the course of ten years, UPS assigned Findley various jobs, from part-time loader to co-chair of the safety committee, and he performed his duties free from written reprimand.

Things changed in December 2002. That month, Findley filed disability-discrimination complaints against UPS with both the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission (EEOC). These turned out to be the first in a series of similar allegations: between June 2003 and November 2004, Findley filed three more EEOC complaints alleging disability discrimination and sued UPS in state court for violating the Act.

Findley's complaints, which were all eventually dismissed, roughly coincided with four UPS disciplinary actions. In June 2004, just eight days after Findley filed an EEOC complaint, UPS terminated him for purportedly "walking off the job"—clocking out before completing his work. Findley grieved the termination, however, and UPS reinstated him. UPS then issued him a written warning for neglecting to turn in a uniform, a reprimand that came two months after he filed another EEOC complaint. For UPS's third censure—which it issued just two weeks after he filed yet another EEOC complaint—it again terminated Findley, this time for failing to return to work at the end of a strike. When Findley complained about this decision, UPS reinstated him, but he survived only six more months. In April 2005, UPS fired him for dishonesty, repeatedly refusing to follow management's instructions, and other serious offenses. Though Findley grieved this termination too, UPS chose not to reinstate him.

Findley, invoking the district court's diversity jurisdiction, then sued UPS for discrimination and retaliation in violation of Michigan law. The court granted UPS summary judgment on both claims; Findley appeals that decision only with respect to his retaliation claim.

II.

Findley admits that only one employment action—the allegedly retaliatory April 2005 termination—falls within the applicable limitations period, *see* Mich. Comp. Laws § 600.5805(1), (10), and that the *McDonnell Douglas* burden-shifting scheme applies to his claim, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–05 (1973). Under this scheme, Findley must first establish a prima facie case of retaliation; the burden then shifts to UPS "to produce evidence of a legitimate, nondiscriminatory reason for its actions"; and in response Findley must "demonstrat[e] that this legitimate reason is pretextual." *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009) (internal quotation marks and citation omitted); *see also Roulston v. Tendercare (Mich.), Inc.*, 608 N.W.2d 525, 530 (Mich. Ct. App. 2000) (per curiam). In his appellate brief, Findley rushes through his prima facie case—even though the district court found it lacking—and then discusses pretext in detail. Yet we, like the district court, need not address pretext: Findley's claim fails at the prima-facie-case stage because he cannot show causation.

To make out a prima facie retaliation case, Findley must show, *inter alia*, a cause-and-effect relationship between the filing of his EEOC complaints and his firing. *See Bachman v. Swan Harbour Assocs.*, 653 N.W.2d 415, 437 (Mich. Ct. App. 2002) (requiring a "causal connection"

between protected activity and an adverse employment action).  Though Findley highlights the

temporal proximity between his November 2004 discrimination complaint and his April 2005

termination, he concedes that temporal proximity alone does not establish the requisite causal

connection: Michigan law requires that he "show something more than merely a coincidence in time

between" these events.  *Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 660

(Mich. 2005) (internal quotation marks and citation omitted).  For that "something more," Findley

points to UPS's (A) heightened scrutiny and (B) pattern of retaliatory acts.  We agree with UPS that

neither of these theories suffices here.

A.

Findley first argues that UPS's repeated disciplinary actions, which began only after he filed

discrimination complaints, show that UPS increasingly scrutinized him in retaliation for his

protected conduct.  *See Hamilton*, 556 F.3d at 435–36 (holding that plaintiff sufficiently established

causation by demonstrating temporal proximity combined with heightened or intensified scrutiny).

This theory, for two reasons, does not warrant reversal of the summary judgment granted to UPS.

First, Findley forfeited a heightened-scrutiny argument.  Not once before the district court

did he mention heightened scrutiny, intensified scrutiny, or *Hamilton*, the case upon which he now

relies.  Rather, he urged that UPS's previous attempts to terminate him demonstrated its

"predisposition to retaliate" against him.  The district court rejected Findley's predisposition theory

because he offered no authority to support it, and he appeared to be conflating an element of his

- 4 -

*discrimination* claim—a predisposition to *discriminate*—with a viable *retaliation* theory. On appeal, Findley changes tack and recasts UPS's alleged "predisposition to retaliate" as heightened scrutiny. Yet by depriving the lower court of the first crack at examining his heightened-scrutiny argument, he forfeits review by this court of that previously unasserted theory. *See Bailey v. Floyd Cnty. Bd. of Educ. ex rel. Towler*, 106 F.3d 135, 143 (6th Cir. 1997) ("It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice.").

Second, irrespective of forfeiture, Findley's heightened-scrutiny theory lacks evidentiary support. For proof, he simply reiterates that UPS's repeated reprimands followed his discrimination complaints. But merely being disciplined is not enough to establish a genuine issue of material fact; rather, showing "that the scrutiny *increased* is critical." *Hamilton*, 556 F.3d at 436. And Findley fails to connect the dots. He does not explain *how* UPS increased scrutiny—by, for example, monitoring him more frequently, examining his actions more closely than a coworker's, or reviewing his work habits or production more harshly. Nor did he testify, as did Hamilton, that UPS disciplined him after it "greatly intensified" its scrutiny. *See id.* at 432. Findley's factually undeveloped assertion that UPS heightened its scrutiny—mentioned for the first time in his appellate brief—does not justify reversal of summary judgment.

B.

Findley next points to his first three disciplinary actions—two attempted terminations and a written warning—as evidence of a pattern of retaliation from which a jury could infer causation for the actionable discipline, his April 2005 termination.

Michigan courts recognize the viability of a pattern-of-retaliation theory. This theory allows Findley to use adverse employment acts occurring outside the limitations period as background evidence to show a pattern of retaliation. *See Campbell v. Dep't of Human Servs.*, 780 N.W.2d 586, 592 (Mich. Ct. App. 2009), *appeal dismissed*, 784 N.W.2d 824 (Mich. 2010). To establish that pattern, however, he must prove that at least one of the prior censures constitutes retaliation, starting with a prima facie case. *See id.* at 593 (finding an actionable pattern of discrimination where the female plaintiff's employer repeatedly promoted men—and sometimes less-qualified ones—to a position for which she was qualified). But Findley cannot show a pattern.

None of the first three disciplinary actions works for retaliation because each lacks the requisite causal connection to Findley's protected activity. As to the first, no one involved in the decision to fire him for "walking off the job" knew about his June 2004 EEOC complaint. *See, e.g.*, *McBrayer v. Detroit Med. Ctr.*, No. 294268, 2010 WL 5175458, at *3 (Mich. Ct. App. Dec. 21, 2010) (per curiam) (holding that plaintiff failed to meet her prima-facie-causation burden because her supervisors—the individuals who decided to suspend her—had no knowledge of her protected activity). For the second, Findley does not dispute that he initially refused to turn in the uniform. And, as to the third, the undisputed evidence shows that his supervisor instructed him to call in each

day during the strike to learn whether he should report back to work, and he simply did not comply with that instruction. *See, e.g.*, *O'Leary v. Charter Twp. of Flint*, No. 295078, 2011 WL 1376306, at *3 (Mich. Ct. App. Apr. 12, 2011) (per curiam) (finding no causation at the prima-facie stage where, among other things, plaintiff admitted the offense). Findley's brief tries to overcome these causation deficiencies but succeeds only in mischaracterizing the factual record.

Findley retreats to the ping-ponging of events (EEOC complaint, termination, EEOC complaint, written warning, EEOC complaint, termination) to explain why each instance of discipline constitutes retaliation. But, as discussed, temporal proximity alone will not support causation. *See Garg*, 696 N.W.2d at 660. He thus leaves us without that "something more" necessary to conclude that any of the first three reprimands amounts to retaliation. *See id.* And without a single instance of retaliation, he of course cannot show a *pattern* of retaliation.

## C.

Finally, Findley offhandedly remarks in the causation section of his brief that UPS never filled a full-time position that he bid on. Because his argument stops there, untethered to any theory of causation, we do not take it up. *See United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (alteration in original) (internal quotation marks and citation omitted)).

III.

For these reasons, we affirm the district court's judgment.