# STATE OF MICHIGAN

# COURT OF APPEALS

CEDRIC CARTER,

       Plaintiff-Appellant,

v

CAPITAL AREA TRANSPORTATION
AUTHORITY,

       Defendant-Appellee.

UNPUBLISHED
April 4, 2017

No. 330573
Ingham Circuit Court
LC No. 14-001008-CZ

Before: BECKERING, P.J., and O'CONNELL and BORRELLO, JJ.

PER CURIAM.

Plaintiff, Cedric Carter, appeals as of right from the trial court's grant of summary disposition in favor of defendant, Capital Area Transportation Authority (CATA), under MCR 2.116(C)(10). Because we agree with the trial court that there was no genuine issue of material fact as to whether defendant discriminated against plaintiff in violation of Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, we affirm.

## I. PERTINENT FACTS

Plaintiff suffers from cerebral palsy and is wheelchair bound. On the evening of November 14, 2013, plaintiff, accompanied by his wife and three children, boarded the Number 9 CATA bus. The bus stopped at a staging area located in the parking lot of a large store where plaintiff and his family planned to change to the Number 5 bus, which would take them to a restaurant. According to the driver of the Number 5 bus, the staging area, which was a raised platform, was perpendicular to a thoroughfare running directly in front of the store. This thoroughfare, said the driver, was very busy, particularly during the evenings. As the Number 9 bus carrying plaintiff and his family was arriving at the staging area, the Number 5 bus, which had been waiting at the station, was starting to leave pursuant to its designated departure time.

Plaintiff testified at his deposition that when the Number 9 bus arrived at the staging area, he asked the driver to signal to the driver of the Number 5 bus to wait so that he could board before it left. Plaintiff's wife stated that she disembarked with the children while plaintiff was unstrapped before exiting the bus via its wheelchair ramp. According to the deposition testimony of plaintiff's wife, the couple's eldest child ran ahead at her direction to the Number 5 bus, entered the bus, and asked the driver to wait for his family. However, according to

-1-

plaintiff's wife, when she arrived at the bus the driver told her that she was past her loading point and did not have time for a wheelchair. Plaintiff's wife signaled to the child to leave the bus.

Plaintiff further testified that he arrived at the Number 5 bus, knocked on the front door, and said, "excuse me ma'am. I was told that you're not going to let me on because you don't have time for a wheelchair." According to plaintiff, the driver responded, "I'm past my loading point. I don't wait for anyone." The driver told him he would have to wait for the next bus. Plaintiff stated that the bus had pulled away from the loading point, but was only three feet from the curb and was not moving. After plaintiff's exchange with the driver, the bus departed.

The driver of the Number 5 bus testified at her deposition that she was at the staging area when the Number 9 bus arrived, but then pulled away from the staging area and into a lane of traffic. At this point, a little boy knocked on the door of the bus, entered, and ran to a seat in the back, informing her that they had to wait for his family. The driver said she told the boy she could not wait for his family. The driver also testified that she then told the boy's mother that she could not wait for the family, that she was past her loading point, and she advised the mother when the next bus was coming. The driver estimated that she was about 15 feet from the staging area at the time of this exchange.

Plaintiff sued defendant, contending that he was discriminated against when attempting to board the Number 5 bus because of his disability. The trial court granted summary disposition to defendant.

## II. ANALYSIS

### A. STANDARD OF REVIEW

The trial court granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(10). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the documentary evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, the trial court may grant the motion. *Id*. MCR 2.116(C)(10), (G)(4).

### B. RELEVANT LAW

In Count II of his amended complaint, plaintiff alleged a violation of the PWDCRA, MCL 37.1101 *et seq.*, formerly known as the Handicappers' Civil Rights Act.[1] *Bachman v Swan*

---

[1] Although he alleged other theories of liability that were also dismissed by the trial court, plaintiff only appeals the trial court's ruling with respect to Count II.

*Harbour*, 252 Mich App 400, 402 n 1; 653 NW2d 400 (2002). The purpose of the PWDCRA is stated in MCL 37.1102 as follows:

(1) The opportunity to obtain employment, housing, and other real estate and full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a disability is guaranteed by this act and is a civil right.

(2) Except as otherwise provided in article 2, 1 a person shall accommodate a person with a disability for purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship.

Plaintiff asserted that defendant's refusal to board him on the Number 5 bus constituted conduct prohibited by the PWDCRA pursuant MCL 37.1302(a), which states:

Except where permitted by law, a person shall not:

(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids.

To establish a prima facie case of discrimination under the PWDCRA, plaintiffs must show that (1) they are "disabled" as defined by the Act, (2) they are able to use and benefit from the service, and (3) defendants discriminated against them by denying them "full and equal enjoyment" of the service. MCL 37.1302(a); see *Bachman v Swan Harbour Ass'n*, 252 Mich App 400, 426; 653 NW2d 415 (2002) (discrimination in housing); *Chiles v Machine Shop, Inc*, 238 Mich App 462, 473; 606 NW2d 398 (1999) (discrimination in employment); *Cebreco v Music Hall Ctr for the Performing Arts, Inc*, 219 Mich App 353, 360; 555 NW2d 862 (1996) (discrimination in public accommodations). However, if a plaintiff offers direct evidence of discrimination, no prima facie showing is required. *DeBrow v Century 21 Great Lakes, Inc*, 463 Mich 534, 539-40; 620 NW2d 836 (2001). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor." *Hazle v Ford Motor Co*, 464 Mich 456, 465; 628 NW2d 515 (2001) (citation omitted).

## C. APPLICATION

Plaintiff first argues that the bus driver's statement that she did not have time for a wheelchair constitutes direct evidence of discrimination that, viewed in the light most favorable to plaintiff, *Quinto*, 451 Mich at 362, was sufficient to survive defendant's motion for summary disposition. We disagree.

Plaintiff characterizes the bus driver's statement that she did not have time for a wheelchair as direct evidence of discrimination, and likens this case to *Bachman*, 252 Mich App 400 (2002). In *Bachman*, a disabled tenant brought an action under the PWDCRA against the defendants alleging that they refused to accommodate him and discriminated and retaliated

against him for seeking accommodations. *Bachman*, 252 Mich App at 407-408. During a confrontation with one of the defendants subsequent to management's denial of the plaintiff's request for certain accommodations, the defendant allegedly said, "I don't know who you people think you are but you are not going to get any special treatment here." *Id*. at 405, 433. The plaintiff asserted that this statement evinced the defendants' active discrimination against him. *Id*. at 432. This Court acknowledged that the " 'remark may be subject to varying interpretations,' " *id*. at 433, quoting *DeBrow*, 463 Mich at 538, and "agreed that plaintiff has presented direct evidence of discrimination under the PWDCRA[,]" *id* at 433. The Court treated as buttressing its conclusion the fact that the remark occurred before the defendant treated the plaintiff differentially by assessing him a $50 moving fee. *Id*. Although the defendant denied making the statement, the Court found the matter one of credibility, properly left to the jury. *Id*.

The instant statement is distinguishable from the one made in *Bachman*. In *Bachman*, the context of the alleged statement supported the Court's conclusion that the statement was direct evidence of discrimination. The *Bachman* defendant purportedly made the remark during a confrontation over the plaintiff's request for accommodations relative to his disability, and followed it with imposition of an apparently arbitrary fee for moving furniture. In addition, the plaintiff did not indicate any statements or conditions accompanying the remark that weighed in favor of a nondiscriminatory interpretation. By contrast, in this case, plaintiff, his wife, and his eldest son testified that the driver's complete statement was, "I don't have time for a wheelchair. I'm past my loading point." The bus driver in turn maintained that she informed plaintiff and his wife that she was past her loading point and could not load them because it was unsafe. If plaintiff's deposition testimony is accepted at face value, the driver's full statement, if believed, does not "require the conclusion that unlawful discrimination was at least a motivating factor." *Hazle*, 464 Mich at 465. Rather, plaintiff's account of the bus driver's complete statement, viewed in the light most favorable to plaintiff, *Quinto*, 451 Mich at 362, indicated that the driver would not board plaintiff because she had already pulled away from the bus stop pursuant to her scheduled departure time and due to the location of the bus at the time of plaintiff's request. There is no allegation or evidence to indicate that the bus driver left the station in order to avoid boarding plaintiff. Further, the trial court did not place an improper burden on plaintiff because, for purposes of deciding the motion, it credited plaintiff's full account of what the driver said. In doing so, the trial court correctly concluded that the complete statement plaintiff attributed to the driver was not direct evidence of discrimination.

Plaintiff next argues that there was a genuine issue of material fact in relation to the position of the bus at the time of the incident. We agree that the parties dispute precisely how far away from the bus stop the bus was when plaintiff and his family attempted to board it, but, in light of what the parties agree on, we conclude that the precise distance is not material.

The bus driver testified at her deposition that she began to leave the bus stop as the Number 9 bus was pulling up. She said that, if an arriving bus wants a departing bus to wait for a transfer, proper procedure requires the arriving bus to call dispatch, and dispatch will instruct the departing bus to wait. She said that she did not remember receiving any such calls during the relevant time. She said that she had pulled into the thoroughfare in the parking lot when a boy ran up and knocked on her door, and that when someone is running beside a bus, the bus must stop as a matter of safety. The driver acknowledged the lack of physical impediments to lowering the wheelchair ramp, but insisted she believed that to do so would have created a

situation potentially dangerous to plaintiff, as well as to the drivers of vehicles having to go around the bus as it jutted out into the busy thoroughfare. She said that when she told the boy who jumped onto the bus and ran to the back that she could not wait for his family, she did not know that his father was in a wheelchair.

Plaintiff does not dispute that the Number 5 bus had left the bus stop before he and his family attempted to board it. Nor does he indicate that the driver of the Number 9 bus telephoned dispatch to request that the Number 5 bus wait for a transfer. Instead, he testified that he assumed when the driver of the Number 9 bus waved at the driver of the Number 5 bus, it was a signal for the driver to wait for a transfer. Plaintiff acknowledged at the hearing on defendant's summary disposition motion that the bus was in the parking lot's thoroughfare when he and his family attempted to board it. He does not dispute the driver's claim that boarding him would have been unsafe; rather, he implies that the driver should have boarded him because nothing prevented the ramp from being lowered, and cars drive around buses all of the time.

Viewing the evidence in the light most favorable to the plaintiff, *id*, we conclude that no genuine issue of material fact is in dispute. Although the parties differed in their estimation of how far the bus was from the edge of the bus stop's curb, it is undisputed that the bus had left the bus stop and entered a potentially busy travel lane in the parking lot when plaintiff and his family attempted to board it. Nothing supports plaintiff's expectation that his family would be allowed to board the departing Number 5 bus except his unsupported assumption that the driver of the Number 9 bus signaled the driver to wait. The undisputed fact that the Number 5 bus did not wait, but pulled away from the bus stop, undermines the correctness of this assumption. Not only did plaintiff testify in his deposition that the bus had left its staging area, but he agreed that, once the bus had pulled away from the staging area, it was in a traffic lane when he and his family attempted to board. In other words, regardless of how far away the bus had moved from the curb, plaintiff never disputed that the bus was in the thoroughfare, and thus exposed to traffic entering the nearby store's parking lot. Further, plaintiff did not dispute defendant's assessment that it would have been unsafe to board him, and in fact tacitly acknowledged the hazard by suggesting that cars have to go around buses all the time. We conclude that there was no genuine issue of material fact as to the relevant question of whether the bus had already departed from the bus stop and entered into a travel lane at the time plaintiff sought to board the bus.

Under the facts presented and viewed in the light most favorable to plaintiff, we conclude that the trial court properly granted summary disposition to defendant.

Affirmed.

/s/ Jane M. Beckering
/s/ Peter D. O'Connell
/s/ Stephen L. Borrello