*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TAMARA NOE,

        Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

UNPUBLISHED
February 5, 2019

No. 342374
Eaton Circuit Court
LC No. 2016-000292-CD

Before: K. F. KELLY, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

Plaintiff, Tamara Noe, appeals as of right the order of the trial court granting summary disposition to defendant, Department of Treasury, under MCR 2.116(C)(10). We affirm.

## I. FACTS

This case arises from plaintiff's claim that defendant violated the Persons With Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, by firing her in retaliation after she sought accommodation for her disability. Plaintiff was employed by defendant from February 2009 until her termination on October 22, 2013, effective retroactively to June 27, 2013. Plaintiff began her employment with defendant as an unemployment examiner, then transferred to defendant's unclaimed property division, and thereafter transferred to the International Fuel Tax Agreement (IFTA) section of defendant's Special Taxes Division in October 2012.

Plaintiff testified that the day she began working in the IFTA section, her supervisor, Seth Martin, told her that another employee in that section, Henry Ware, was considered a problem employee. That same week, two other employees cautioned plaintiff not to get on Ware's bad side. Plaintiff testified that she attempted to work cooperatively with Ware, but within a few weeks Ware was making statements to her that were belittling and intimidating. She testified that Ware told her that his goal was to make other employees in the unit miserable because he was stuck in that unit, and thought it was funny that other employees were afraid of him. She further testified that Ware carried a four-inch pocket knife in the office and used it when they

were opening boxes together. Ware also told her that he had been in the military and that "he could kill anyone in the building and he could get away with it."

Plaintiff testified that in January 2013, she told her supervisor, Martin, about Ware's statement that he could kill people in the building, and that she was afraid of him, but Martin told her simply to ignore Ware. She testified that thereafter, Ware would sometimes stand silently in the entryway of her cubicle and stare at her. She testified that Ware told her that he was the true boss of the unit, and that their supervisor, Martin, only thought he was the boss.

Plaintiff thereafter reported Ware's behavior to a supervisor in another department and to defendant's Human Resources department, and discussed the problem with Omer Guzman (Departmental Manager) and Doug Miller (Division Administrator). Plaintiff's supervisor, Martin, apparently unhappy because plaintiff had contacted his supervisors, told her that this problem was going to "come back on him." Plaintiff testified that after the conversation with Martin, she became so upset and afraid about Ware that she became ill and left work and went to a medical center to ascertain whether she was having a heart attack. The next day, Martin asked her why she had left the previous day, and she explained that she had believed that she was having a heart attack. Plaintiff testified that Martin acted incredulous in reaction to her explanation, and so she applied for a transfer.

On February 13, 2013, Doug Miller (Division Administrator) directed plaintiff to move her belongings to a cubicle on the first floor so that she would not have contact with Ware. According to plaintiff, however, when she moved to the first floor the next day on February 14, 2013, Ware immediately discovered where she was sitting and walked slowly by her cubicle glaring at her. She then went to a supervisor's office, where she sat for the rest of the day with another employee to ensure her safety. That day, Ware hung up signs in the office, one of which stated, "Absolute Power corrupts absolutely. But Fear not. For it only exists in the mind of the narcissist. Absolute Power is not a natural phenomenon," while another sign stated "There can be NO Forward Without Compensation for the PAST." Plaintiff testified that she worked until the end of that day, but did not return to work after that.

From February 18, 2013 through March 18, 2013, plaintiff took unpaid leave under the federal Family and Medical Leave Act. Plaintiff was diagnosed by Diane Mater, family practitioner, with acute stress reaction and post-traumatic stress disorder. In addition, Clinical Psychologist William Miller diagnosed plaintiff with acute stress disorder and generalized anxiety disorder, and reported that he expected plaintiff's potential date for return to work to be July 8, 2013, if plaintiff "could return to working in a safe environment or be transferred to another department."

Plaintiff thereafter remained on a medical leave of absence, and sought disability and workers compensation benefits. In response to her application for workers compensation benefits, defendant required plaintiff to undergo an independent medical examination (IME). The IME was conducted by Dr. C. H. Dudley, who opined that plaintiff was able to return to work and that the problem could "only be resolved administratively rather than through mental health channels." Defendant thereafter directed plaintiff to return to work by June 27, 2013; when plaintiff failed to do so, defendant terminated plaintiff's employment by letter dated June

28, 2013. On August 13, 2013, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).

Plaintiff's union filed a grievance on her behalf, challenging the termination. The union and defendant reached a settlement agreement on October 7, 2013, requiring plaintiff to provide within 10 days a doctor's statement releasing her to return to work without restrictions. Defendant agreed that if she did so, plaintiff would be given a position in the Motor Fuel Unit. Although the language of the settlement agreement is not entirely clear, the agreement appears to provide the alternative that if plaintiff provided a doctor's statement that she continued to need accommodation, she would be placed on medical layoff, and if she did nothing, she would be fired.

After being advised of the settlement agreement, plaintiff responded to her union that she did not agree with the settlement agreement because the offered position, though in a different unit, would mean working at a desk next to Ware. Plaintiff stressed that her doctor had not authorized her to return to work unless she could work in a safe environment, meaning separate from Ware.

Plaintiff did not return to work and did not provide further medical documentation regarding her alleged disability. Defendant terminated plaintiff's employment on October 22, 2013, retroactively effective to June 27, 2013. Defendant eventually terminated Ware's employment in August or September 2016 after Ware threatened to bring a machine gun into the office and shoot employees, and specifically threatened to shoot plaintiff's supervisor, Martin.

On March 27, 2016, plaintiff filed her complaint initiating this action in the trial court, alleging that defendant violated the PWDCRA by firing her. Plaintiff alleged that she has a disability (anxiety and post-traumatic stress disorder resulting from her contact with Ware), and that she was fired in retaliation for her request for reasonable accommodation of her disability, which was to be given a work location away from Ware. Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff had not demonstrated that defendant retaliated against her by firing her. The trial court granted defendant's motion, and dismissed plaintiff's complaint. Plaintiff now appeals to this Court.

## II. DISCUSSION

Plaintiff contends that the trial court erred in granting defendant summary disposition and in concluding that there was no genuine issue of material fact regarding plaintiff's claim under the PWDCRA. We disagree.

## A. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny summary disposition. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5-6; 890 NW2d 344 (2016). In so doing, we review the entire record to determine whether the moving party was entitled to summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Issues of statutory construction are also reviewed de novo. *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 386; 738 NW2d 664 (2007).

When reviewing an order granting summary disposition under MCR 2.116(C)(10), this Court considers all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016). Summary disposition under MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. When a motion is made and supported under MCR 2.116(C)(10), the burden shifts to the nonmoving party to show, by affidavits or other documentary evidence, that there is a genuine issue of material fact. MCR 2.116(G)(4); *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the nonmoving party does not make such a showing, summary disposition is properly granted. *Id*. at 363.

## B. PWDCRA

The PWDCRA prohibits discrimination against any persons based upon their disability status. *Peden v Detroit*, 470 Mich 195, 203; 680 NW2d 857 (2004). Under the PWDCRA, "an employer shall refrain from taking any of a number of adverse employment actions against an individual because of a disability . . . that is unrelated [or not directly related] to the individual's ability to perform the duties of a particular job or position." *Id*. at 203-204 (quotation marks omitted). The plaintiff bears the burden of proving that the defendant violated the PWDCRA. *Id*. at 204. If the plaintiff sets forth a prima facie case of purposeful discrimination, the burden then shifts to the defendant to rebut the plaintiff's evidence. *Id*. at 205.

To establish a prima facie case of discrimination under the PWDCRA, a plaintiff must demonstrate that (1) she is disabled as defined by the act, (2) the disability is unrelated to the plaintiff's ability to perform the job, and that (3) she was discriminated against in one of the ways described by the statute. *Id*. at 204. The PWDCRA defines "disability" and "unrelated to the individual's ability," as follows:

(d) . . . "disability" means 1 or more of the following:

(*i*) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

(A) For purposes of article 2, substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.

\* \* \*

(*l*) "unrelated to the individual's ability" means, with or without accommodation, an individual's disability does not prevent the individual from doing 1 or more of the following:

(*i*) For purpose of article 2, performing the duties of a particular job or position. [MCL 37.1103(d)(*i*)(A), (*l*)(*i*).]

-4-

In its motion for summary disposition before the trial court, defendant did not challenge that plaintiff (1) has a disability within the meaning of the PWDCRA, or that (2) her disability is unrelated to her ability to perform the duties of her job. Rather, defendant challenged only whether plaintiff established that defendant discriminated against her in one of the ways prohibited by the statute.

Although plaintiff's complaint does not identify the statutory section under which she is proceeding, plaintiff's complaint alleges that defendant fired her in retaliation after she engaged in the "protected activity" of requesting accommodation for her disability, thereby suggesting that defendant violated § 602 of the PWDCRA.[1] Section 602 of the PWDCRA provides that a person shall not "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.1602(a).

A charge of retaliation under § 602 of the PWDCRA is determined by the same test applied when determining an alleged violation under the Civil Rights Act, being that "[t]o establish a prima facie case of unlawful retaliation under the Civil Rights Act, a plaintiff must show (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Mitan v Neiman Marcus*, 240 Mich App 679, 681; 613 NW2d 415 (2000) (quotation marks and citation omitted) (holding that reasoning applicable to the Civil Rights Act applies with equal force to the retaliation provision of what was then the Handicappers' Civil Rights Act, now the PWDCRA). In this case, defendant moved for summary disposition before the trial court, arguing that plaintiff had not established that she had been engaged in a protected activity, nor that there was a causal connection between the alleged protected activity and the adverse employment action.

To establish that a plaintiff engaged in a "protected activity" within the meaning of § 602, the plaintiff must establish one of two circumstances: that she opposed a violation of the

---

[1] The factual allegations of plaintiff's complaint suggest that plaintiff potentially could have set forth a prima facie case that defendant failed to accommodate her disability in violation of § 102 of the act, MCL 37.1102, which provides that "a person shall accommodate a person with a disability for purposes of employment . . . unless the person demonstrates that the accommodation would impose an undue hardship." Plaintiff also arguably could have successfully alleged that defendant discharged her because of her disability in violation of § 202 of the act, which provides that an employer shall not "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1202(1)(b); see also *Chiles v Machine Shop, Inc*, 238 Mich App 462, 473; 606 NW2d 398 (2000). Count I of plaintiff's complaint, however, does not explicitly allege a violation of either § 102 or § 202, and instead alleges only retaliatory discharge, presumably under § 602, MCL 37.1602.

PWDCRA, or alternatively, that she made a charge, filed a complaint, or testified, assisted, or participated in an investigation, proceeding, or hearing under the PWDCRA. *Bachman v Swan Harbour Assoc*, 252 Mich App 400, 435; 653 NW2d 415 (2002). In this case, the trial court adopted the defendant's argument that plaintiff's request for accommodation was a protected activity, but only if the request for accommodation was reasonable. The trial court concluded that plaintiff's request for a transfer was not a reasonable request for accommodation in light of *Rourk v Oakwood Hosp Corp*, 458 Mich 25, 30; 580 NW2d 397 (1998), in which our Supreme Court held that an employer's obligation to accommodate an employee with a disability did not extend to providing the employee with a transfer to a different position, and therefore plaintiff had not been engaged in a protected activity.

We observe, however, that nothing in the PWDCRA suggests that requesting an accommodation for one's disability is tantamount to opposing a violation of the PWDCRA, or initiating or participating in a proceeding under the PWDCRA within the meaning of § 602 of the act. See *Bachman*, 252 Mich App at 436. Before the trial court, plaintiff relied upon federal authority to support her contention that requesting an accommodation is a protected activity. But although there is authority for the proposition that requesting an accommodation can be a protected activity in the context of a retaliation claim under the ADA, see *AC ex rel JC v Shelby Co Board of Educ*, 711 F3d 687, 698 (CA 6, 2103), neither party in this case points to Michigan authority applying that same reasoning to § 602 of the PWDCRA. And in fact, this Court in *Bachman*, 252 Mich App at 436, determined that requesting an accommodation for a disability did not constitute opposition to a violation of the PWDCRA sufficient to establish a protected activity. *Id*. (the plaintiff's request for snow removal by the defendant landlord "did not constitute an opposition to a violation of the PWDCRA, but was merely a request for an accommodation").

Federal laws are not binding upon a Michigan court interpreting a Michigan statute. *Penden*, 470 Mich at 217. When interpreting provisions of the PWDCRA, the analogous federal precedents are persuasive, but not binding. *Chmielewski v Xermac, Inc*, 457 Mich 593, 601-602; 580 NW2d 817 (1998); *Chiles*, 238 Mich App at 472. This Court and the Michigan Supreme Court have noted that the ADA and the PWDCRA share the same purpose and use similar definitions and analysis, *Chiles*, 238 Mich App at 473, but that the PWDCRA and the ADA are not identical. *Penden*, 470 Mich at 217. So although this Court may look to the ADA, and federal cases interpreting the ADA, for guidance when interpreting the PWDCRA, and this Court is bound to follow precedent from the Michigan Supreme Court and published precedent from this Court adopting federal analysis, this Court is not otherwise bound to follow federal precedent in analyzing the PWDCRA. *Id*. Further, our Supreme Court has cautioned against simply assuming that the PWDCRA analysis will automatically parallel analysis under the ADA. *Id*. Thus, even though federal authority indicates that requesting an accommodation is a protected activity under the ADA, it does not necessarily mean that requesting an accommodation is a protected activity under the PWDCRA.

But in this case, even if plaintiff were able to meet the burden of proving that she was engaged in a protected activity when she requested accommodation, plaintiff has failed to demonstrate the element of causation. As noted, to establish a prima facie case of retaliation under § 602 of the PWDCRA, the plaintiff must demonstrate that (1) she engaged in a protected activity; (2) this was known by the defendant; (3) the defendant took an employment action

adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Mitan*, 240 Mich App at 681. "To establish a causal connection, a plaintiff must demonstrate that his participation in the protected activity was a 'significant factor' in the employer's adverse employment action, not merely that there was a causal link between the two events." *Aho v Dep't of Corrections*, 263 Mich App 281, 289; 688 NW2d 104 (2004). "[M]ere discriminatory or adverse action will not suffice as evidence of retaliation unless the plaintiff demonstrates a clear nexus between such action and the protected activity." *Id*. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to demonstrate a legitimate business reason for terminating the plaintiff's employment, and if demonstrated, the burden then shifts back to the plaintiff to prove that the reason offered by the defendant was not the true reason, but was actually a pretext. *Id*.

Here, plaintiff failed to establish a causal connection between her request for accommodation and defendant's discharge of her. To summarize the timeline of events in this case, plaintiff asserted that she had a disability and could only work if accommodated. Defendant did not provide the requested accommodation. Plaintiff then sought workers compensation benefits. After the independent medical examiner concluded that she could return to work without accommodation, defendant demanded that she return to work. Plaintiff refused. Defendant fired her. Plaintiff then filed an EEOC claim[2] and her union also filed a grievance on her behalf. After negotiating with the union, defendant offered to allow defendant to return to work in a different position, but without the requested accommodation (working separately from Ware), or to remain on medical leave upon providing a doctor's verification that she continued to be disabled. Plaintiff refused to accept either option. Defendant again fired her.

Plaintiff bears the burden of establishing a causal connection between her request for accommodation and defendant discharging her. Defendant, however, fired plaintiff immediately upon her rejection of the settlement of the union grievance, in which defendant offered to return plaintiff to a job in a different unit or to permit her to establish through a doctor's verification that she was unable to return to work. That she was fired immediately upon her rejection of the settlement lends credence to the argument that she was fired because she would not return to work rather than because she requested accommodation.

Moreover, even if plaintiff sufficiently alleged a causal connection, after defendant articulated a legitimate business reason for firing plaintiff, being her refusal to return to work, the burden shifted back to plaintiff to prove that the legitimate reason offered was not the true reason, but only a pretext. See *Aho*, 263 Mich App at 289.

---

[2] Because plaintiff was initially fired before she filed her EEOC complaint, we reject plaintiff's alternative argument that the filing of that claim was the causally connected protected activity underlying her termination.

In this case, plaintiff points to nothing in the record to support the theory that defendant's contention that she was fired for her refusal to return to work was a mere pretext. The trial court therefore did not err in granting defendant summary disposition of plaintiff's claim.

Affirmed.


/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan
/s/ Michael F. Gadola