*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LARRY CARL SAHR,

        Petitioner-Appellant,

v

SECRETARY OF STATE,

        Respondent-Appellee.

UNPUBLISHED
February 22, 2024

No. 364765
Saginaw Circuit Court
LC No. 22-047420-AL

Before: M. J. KELLY, P.J., and JANSEN and GARRETT, JJ.

PER CURIAM.

Petitioner, Larry Sahr, appeals the circuit court order denying his appeal from an administrative decision by a hearing officer for respondent, the Secretary of State, that granted Sahr a restricted driver's license subject to a requirement that he install a breath alcohol ignition interlock device on his vehicle. On appeal, Sahr asserts that he presented evidence to the hearing officer establishing that he is disabled and incapable of operating such an interlock device. He contends that, as a result, under the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.* and the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*,[1] he is entitled to an unrestricted license, or, in the alternative, to a different form of alcohol monitoring. We affirm for the reasons stated in this opinion.

---

[1] Sahr presents no argument under the ADA beyond noting its existence and generally asserting its applicability. Ordinarily, inadequate briefing of an issue will constitute abandonment of that issue. *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). "[A]nalysis of claims under the HCRA [which was renamed the PWDCRA by 1998 PA 20] largely parallels analysis under the federal Americans with Disability Act." *Chmielewski v Xermac, Inc*, 457 Mich 593, 602; 580 NW2d 817 (1998). Generally, "it should not simply be assumed that the PWDCRA will parallel the ADA," *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 471; 957 NW2d 377 (2020), but because Sahr did not brief the issue, we presume for purposes of this appeal that he would not be entitled to any relief under the ADA to which he would not be entitled under the PWDCRA.

## I. BASIC FACTS

Sahr's driver's license was revoked in 2008, following his second conviction for operating a motor vehicle while impaired by alcohol. In 2018, the Secretary of State granted Sahr a restricted license subject to, in relevant part, a requirement that he install an interlock device. The Secretary of State revoked that license following Sahr's unapproved removal of the device. Subsequently, Sahr sought an unrestricted driver's license. He alternatively proposed random urine testing or use of an alcohol tether. In support of his request, he presented evidence that he has been diagnosed with chronic obstructive pulmonary disease (COPD). He argued that his COPD is a disability that prevents him from using a breath alcohol ignition interlock device. In support, Sahr's doctor provided a statement that cursorily indicated that Sahr could not exhale enough breath to activate a breath alcohol ignition interlock device. Additionally, Sahr provided testimony and documentary evidence showing that he had been sober for several years.

The hearing officer concluded that an unrestricted license without an interlock device requirement would be inappropriate for several reasons. First, he noted that Sahr had submitted two "dilute" drug screens. He was subsequently asked to submit a third drug screen the next morning, but did not actually submit the drug screen until a few days later. Second, Sahr removed the prior interlock device without permission, which resulted in the revocation of his previous restricted license. Third, the hearing officer noted that Sahr had completed no monitoring term driving on a restricted license, and although it was rare to issue an unrestricted license without such a monitoring term, Sahr was not engaged in an ongoing relapse prevention program, which would be a necessary precondition to such an unrestricted license. The hearing officer did not find persuasive Sahr's evidence that he was incapable of using an interlock device.[2] However, he found that alternative forms of alcohol monitoring were unreasonable because they would not prevent Sahr from potentially driving while impaired.

On appeal, the circuit court determined that although Sahr was disabled for purposes of the PWDCRA and his disability would not otherwise interfere with his ability to drive,[3] the hearing

---

[2] Sahr argues on appeal that the hearing officer erred by finding that he had not adequately proved his inability to use an ignition interlock device. The circuit court did not address this argument. If a trial court fails to make factual findings, it is impossible for this Court to determine whether the trial court clearly erred. *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 79; 903 NW2d 197 (2017). Because this Court's review is limited to determining whether the circuit court clearly erred, *Lehman Investment Co, LLC v Village of Clarkston*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361791); slip op at 6, the question of whether the hearing officer's finding was unsupported by substantial evidence is not properly before us. We will presume that petitioner is genuinely incapable of operating an interlock device, but we expressly do not decide this question.

[3] Because neither party challenges these two findings, we will assume they are correct for purposes of this appeal.

officer's findings were supported by the evidence and Sahr's requested accommodation of an unrestricted license would be unreasonable. As a result, the circuit court denied Sahr's appeal.[4]

## II. APPELLATE JURISDICTION

We must first address whether we lack jurisdiction over this appeal. Generally, when appealing to this Court, an appellant may either file a claim of appeal or file an application for leave to appeal. See MCR 7.203(A) and (B). In this case, Sahr filed a claim of appeal within the time period set forth in MCR 7.204(A)(1); he did not file an application for leave under MCR 7.205. The Secretary of State contends that, as a result, this Court lacks jurisdiction over this appeal because, under MCR 7.203(A) and (B), Sahr's appeal of a circuit court decision on an appeal from an administrative agency must be by application.

Generally, an aggrieved party has an appeal of right from a final order of the circuit court. MCR 7.203(A)(1). However, relevant to this case, there is no appeal of right from a final order of a circuit court that is entered "on appeal from any other court or tribunal." MCR 7.203(A)(1)(a). Rather, an aggrieved party must file an application for leave to appeal such decisions. MCR 7.203(B)(3). Yet, contrary to the Secretary of State's suggestion on appeal, MCR 7.203(A)(1)(a) does not preclude an appeal of right from every circuit court order entered on appeal from an administrative agency. Instead, MCR 7.203(A)(1)(a) only deprives this Court of subject-matter jurisdiction over appeals by right from circuit court reviews of agency decisions when the agency was "acting as a 'tribunal,' " meaning that the agency was "acting in a judicial or quasi-judicial capacity." *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 85-86; 832 NW2d 288 (2013) (quotation marks and citation omitted).

"To determine whether an administrative agency's determination is adjudicatory in nature, courts compare the agency's procedures to court procedures to determine whether they are similar." *Id*. at 86. The Court in *Natural Resources Defense Council* determined that the administrative proceedings were not adjudicatory in nature because they were public hearings with no right to call witnesses or to submit exhibits. *Id*. at 86-87. See also *William Beaumont Hosp v Wass*, 315 Mich App 392, 399-400; 889 NW2d 745 (2016) (concluding that an administrative decision was not adjudicatory in nature because, although the parties were permitted to submit documentary evidence, no witnesses could be called or cross-examined, and "no level of the proceedings provided for an evidentiary hearing.").

---

[4] The circuit court could not have ordered a different kind of alcohol monitoring regardless of the merits of Sahr's arguments. The circuit court's review of the Secretary of State's licensing decision was under MCL 257.323(4), which permits the court to set aside the determination under some circumstances. The court would have been empowered to set aside the issuance of a restricted license, but it was not empowered to change the nature of the restrictions imposed. See *Rodriguez v Secretary of State*, 215 Mich App 481, 482-483; 546 NW2d 661 (1996). Although the viability of such alternatives as alcohol tether or random urine testing might be relevant to the reasonableness of accommodations under the PWDCRA, the circuit court had no power to order an alcohol tether or random urine testing in lieu of an ignition interlock device.

In this case, however, the hearing officer for the Secretary of State was acting in a quasi-judicial capacity. MCL 257.322 addresses hearings and appeals with regard to the Secretary of State's final determinations. It provides, in pertinent part, as follows:

(1) The secretary of state shall appoint a hearing officer to hear appeals from persons aggrieved by a final determination of the secretary of state denying an application for an operator's or chauffeur's license, suspending, restricting, or revoking an operator's or chauffeur's license, or other license action.

(2) The appeal shall be in writing and filed with the secretary of state within 14 days after the final determination. Upon notice of the appeal, the hearing officer shall require production of all documents filed in the matter, together with a transcript of any testimony taken.

(3) In a hearing or matter properly before the hearing officer, he or she may do any of the following:

(a) Issue subpoenas to compel attendance of witnesses.

(b) Issue process to compel attendance.

(c) Punish for contempt any witness failing to appear or testify in the same manner as provided by the rules and practice in the circuit court.

(d) Swear witnesses, administer oaths, and exemplify records in any matter before the officer.

(e) Take additional testimony he or she considers appropriate.

(4) A verbatim record shall be made of the hearing.

(5) After a hearing, the hearing officer may affirm, modify, or set aside a final determination of the secretary of state denying an application for an operator's or chauffeur's license, suspending, restricting, or revoking an operator's or chauffeur' s license, or any other license action. The hearing officer shall include his or her findings of fact and conclusions of law in the record.

As set forth by statute, the kind of administrative hearing involved in this case includes the right to call witnesses, issue subpoenas, provide evidence, and to generally proceed in a manner much like a court proceeding. Therefore, the administrative decision in this matter was "quasi-judicial" in nature, and MCR 7.203(A)(1)(a) deprives this Court of subject-matter jurisdiction over Sahr's claim of appeal by right.

"[W]here a claim of appeal fails to trigger this Court's operational jurisdiction on that basis, this Court has the discretion to decide the matter as on leave granted, and it is inclined to do so in the interests of judicial economy when the appeal presents a matter of significant public interest." *Highland Park v State Land Bank Auth*, 340 Mich App 593, 608; 986 NW2d 638 (2022). Here,

although we question whether a significant *public* interest is at stake,[5] we conclude that, were we to dismiss for lack of jurisdiction Sahr would be entitled to file a delayed application for leave to appeal under MCR 7.205(4)(b) because the claim of appeal was filed within the applicable time period set forth in MCR 7.205(A)(1). As a result, in the interest of judicial economy, we exercise our discretion to treat Sahr's claim of appeal as an application for leave to appeal and grant it. But see *Hart v State*, 506 Mich 857, 865 (2020) (CLEMENT, J., concurring) (recognizing that the practice of treating an improper claim of appeal as an application for leave to appeal and then granting those applications renders nugatory "significant chunks of MCR 7.203 and MCL 600.308.").

## III. DETERMINATION TO ISSUE RESTRICTED LICENSE

### A. STANDARD OF REVIEW

Sahr argues that the circuit court erred by denying his appeal of the administrative decision granting him a restricted driver's license subject to the requirement that he install a breath alcohol ignition interlock device on his vehicle. A circuit court's review of administrative determinations regarding a driver's license is governed by MCR 7.120 and MCL 257.323. Sahr and the circuit court proceeded under MCL 257.323(4). Therefore, the circuit court's review was limited to the administrative record, and it was permitted to "set aside the secretary of state's determination only if," in relevant part:

> (a) In determining whether a petitioner is eligible for full driving privileges, the petitioner's substantial rights have been prejudiced because the determination is any of the following:
>
> (*i*) In violation of the Constitution of the United States, the state constitution of 1963, or a statute.
>
> (*ii*) In excess of the secretary of state's statutory authority or jurisdiction.

---

[5] Sahr argues that he is disabled because he has COPD, which allegedly prevents him from successfully using an interlock device. He asserts that, as a result, he is entitled to a reasonable accommodation for his disability under the PWDCRA and the ADA. Sahr suggests that a reasonable accommodation would be the grant of an unrestricted license or a restricted license that requires him to submit random urine samples to ensure he is not consuming alcohol. At first glance, this would appear to be a matter of significant public interest. After all, the application of the PWDCRA and the ADA afford protections to individuals with disabilities to prevent them from being discriminated against as a result of their disabilities. However, neither the administrative agency, nor the circuit court, declined to apply the PWDCRA or the ADA. Rather, both analyzed the specific facts of Sahr's case and determined that, under his circumstances, the requested accommodations were not reasonable. Thus, although this is a matter that is, undoubtedly, of significant interest to Sahr, it does not reach the level of significant *public* interest.

(*iii*) Made upon unlawful procedure resulting in material prejudice to the petitioner.

(*iv*) Not supported by competent, material, and substantial evidence on the whole record.

(*v*) Arbitrary, capricious, or clearly an abuse or unwarranted exercise of discretion.

(*vi*) Affected by other substantial and material error of law. [MCL 257.323(4).]

"[C]ompetent, material, and substantial evidence on the whole record" is "defined as such evidence, considering the whole record, as a reasonable mind will accept as adequate to justify the conclusions." *Civil Serv Comm v Dep't of Labor*, 424 Mich 571, 581; 384 NW2d 728 (1986), amended in part on other grounds 425 Mich 1201 (1986). "If there is sufficient evidence, the circuit court may not substitute its judgment for that of the agency, even if the court might have reached a different result." *Dearborn Hts Pharm v Dept's of Health and Human Servs*, 338 Mich App 555, 560; 980 NW2d 736 (2021) (quotation marks and citation omitted). "Moreover, if the administrative findings of fact and conclusions of law are based primarily on credibility determinations, such findings generally will not be disturbed because it is not the function of a reviewing court to assess witness credibility or resolve conflicts in the evidence." *Dep't of Community Health v Risch*, 274 Mich App 365, 372; 733 NW2d 403 (2007).

"This Court's review of the circuit court's decision is, in turn, limited to a determination whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings," which is "essentially a 'clearly erroneous' standard of review." *Lehman Investment Co, LLC v Village of Clarkston*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361791); slip op at 6 (quotation marks and citations omitted). "Under this standard, a finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks, brackets, and citation omitted).

## B. ANALYSIS

In the context of employment discrimination, "[t]o prove that a violation of the PWDCRA occurred, a plaintiff must show (1) that he is disabled as defined in the act, (2) that the disability is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute." *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 471; 957 NW2d 377 (2020) (quotation marks, brackets, and citation omitted). The PWDCRA is also intended to ensure that disabled persons have equal opportunities to utilize "public

accommodations, services, and facilities." *Chiles v Machine Shop, Inc*, 238 Mich App 462, 473; 606 NW2d 398 (1999).[6]

Although a governmental entity may have a duty to accommodate disabled persons, that duty only applies "if accommodation can be accomplished without undue hardship" on the part of the governmental entity. *MOSES Inc v SEMCOG*, 270 Mich App 401, 421; 716 NW2d 278 (2006). There is no specific definition of what constitutes an "undue hardship," but the concept implies "a standard of reasonableness" that depends on the circumstances. *Rourk v Oakwood Hosp Corp*, 458 Mich 25, 35-36; 580 NW2d 397 (1998). "We have held that the denial of some or all of a request for accommodation is not a violation of the act if that denial is not unreasonable." *Buck v Thomas M Cooley Law Sch*, 272 Mich App 93, 103-104; 725 NW2d 485 (2006). An undue hardship may include "financial expenses, inconvenience to other patrons, safety or fire hazards, and so forth." *Cebreco v Music Hall Ctr for the Performing Arts, Inc*, 219 Mich App 353, 361; 555 NW2d 862 (1996). An undue hardship may also be premised on an accommodation increasing administrative burdens, *Bachman v Swan Harbor Ass'n*, 252 Mich App 400, 420; 653 NW2d 415 (2002), or an accommodation threatening the well-being of others, *Hall v Hackley Hosp*, 210 Mich App 48, 56; 532 NW2d 893 (1995).

Here, the primary question is whether the circuit court clearly erred by finding that Sahr's request for accommodation in the form of an unrestricted driver's license was unreasonable. Sahr argues that there is no need for any kind of alcohol monitoring, generally citing evidence that he is now sober and claiming to be the kind of person who is now willing and able to follow rules. The evidence does not entirely support that claim. First, his restricted license was revoked because he removed his interlock device without permission, despite repeated admonitions that he would not be permitted to do so without approval and that unilateral removal would be considered a major violation. Second, Sahr was asked to submit a valid urine sample the day after the administrative hearing, but he did not do so until after an intervening weekend. These circumstances suggest that Sahr is not as willing or able to follow rules as he contends. The circuit court concluded that, under the facts of the case, Sahr's repeated driving-while-impaired convictions and failure to engage in an ongoing relapse prevention program supported the hearing officer's determination that petitioner must prove his ability to comply with a restricted license before graduating to a full license. Because there is evidence in the record to support the hearing officer's determination, the circuit court did not clearly err by making that finding.

Next, the hearing officer found that an ignition interlock device would prevent Sahr from driving while impaired, and random urine testing would only detect alcohol after the fact, so random testing was not a viable alternative. The circuit court upheld these findings. Sahr argues that an ignition interlock device would not prevent him from driving a different vehicle not equipped with such a device. Although true, Sahr's argument is misleading because nothing physically prevents him from driving a vehicle right now. More importantly, Sahr admits that an installed interlock device would indeed prevent him from driving his car with alcohol in his system. Therefore, there is substantial evidence in support of the hearing officer's finding, and Sahr

---

[6] We presume for purposes of this appeal that the opportunity to drive a motor vehicle is a "privilege" or "public service" for purposes of the PWDCRA.

essentially asks this Court to substitute its judgment for that of the hearing officer—which neither this Court nor the trial court may do. *Dearborn Hts Pharm*, 338 Mich App at 560.

Further, the hearing officer also stated that only under rare and specific circumstances should a full license be granted without first imposing a monitoring period for the driver to demonstrate the ability to drive safely. One precondition for such a grant of a full license would be "ongoing participation in a relapse prevention program," and Sahr admitted he was not participating in any such program. Clearly, the fact that Sahr is not participating in a relapse prevention program is supported by the evidence. The circuit court agreed with the hearing officer that, in light of Sahr's history and failure to participate in such a program, petitioner must demonstrate that he can comply with the requirements of a restricted license before potentially receiving unrestricted driving privileges.

Sahr argues that various other monitoring systems would be better, or at least equally effective, than using a breath alcohol interlock device. However, "undue hardship" can include administrative burdens, *Bachman*, 252 Mich App at 420, and Sahr fails to consider that the Secretary of State would need to design and implement a novel monitoring infrastructure for those alternatives. Furthermore, the circuit court correctly observed that safety concerns were part of an "undue hardship" analysis. *Cebreco*, 219 Mich App at 361; *Hall*, 210 Mich App at 56. Sahr's proffered alternatives would not prevent him from potentially driving while impaired. As a result, such alternative would, as the circuit court found, "interfer[] with [the Secretary of State's] ability to deter drunk driving effectively." Again, the standard of review is highly deferential, and Sahr's argument asks for this Court to substitute its judgment for that of the hearing officer.

We conclude that, under the particular circumstances of this case, the circuit court did not clearly err by finding that Sahr's requested accommodation of being granted an unrestricted driver's license was not reasonable, so the circuit court properly found no violation of the PWDCRA.

Affirmed. Respondent, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Kristina Robinson Garrett